**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| APPLICATIONS SOFTWARE TECHNOLOGY LLC, as successor by merger and conversion to APPLICATIONS SOFTWARE TECHNOLOGY CORPORATION, and SERENE AST, LLC, | ) ) ) ) ) ) | Case No. 2018-cv-_____ |
| Plaintiffs, | ) ) | Honorable _____ |
| v. | ) ) | Magistrate Judge _____ |
| PARESH KAPADIA and SUAVIS CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME Plaintiffs Applications Software Technology LLC ("AST") and Serene AST, LLC ("Serene AST" and collectively with AST, "Plaintiffs"), by and through their attorneys, Nancy E. Sasamoto, David J. Stein and Jiwon J. Yhee of Masuda, Funai, Eifert & Mitchell, Ltd., and hereby complain of Defendants Paresh Kapadia ("Kapadia") and Suavis Corporation ("Suavis" and collectively with Kapadia, "Defendants"), as follows:

## PARTIES

1.      AST is a Delaware limited liability company engaged in the business of providing information technology solutions through both cloud-based and traditional software for customer experience applications, including, but not limited to, Oracle, SugarCRM, Salesforce.com, Kronos, and other similar solutions customized to the needs of its clients.  AST's principal place of business is located at 1755 Park Street, Suite 100, Naperville, IL 60563.  AST's sole member is Tailwind AST Sub Corporation, a Delaware corporation with its principal place of business in New York.

2.      Serene AST is a California limited liability company engaged in the business of providing information technology solutions to its clients.  Serene AST's principal place of business is located at 3211 Scott Blvd., Suite 201, Santa Clara, CA 95054.  Serene AST's sole member is AST.

3.      Kapadia is an individual and a former employee of Serene AST.  Serene AST terminated Kapadia from employment on January 9, 2018.  As set forth more fully below, Kapadia was a highly compensated Executive Vice President of Serene AST, and prior to Serene AST's acquisition by AST, an equity shareholder of Serene AST's predecessor company, Serene Corporation.  Serene AST terminated Kapadia from its employment immediately after it discovered an ongoing and nefarious scheme whereby Kapadia incorporated a new California company, Defendant Suavis, and began competing directly with the business of AST and Serene AST, in violation of various covenants in his Employment Agreement (as defined below), his Non-Competition Agreement (as defined below), and the Purchase Agreement for the equity interests of Serene AST(as defined below).  Moreover, Kapadia poached Serene AST and AST employees to leave Plaintiffs' employment and work for Suavis in further violation of the above-described covenants, converted company property, client relationships, and trade secrets owned by Plaintiffs all while still employed by Serene AST and in violation of his contractual obligations and his duty of loyalty.  The wrongdoing is ongoing, as set forth more fully below.  Kapadia is a citizen of the state of California, with his last known address being 19305 Zinfandel Court, Saratoga, CA 95070.

4.      Suavis is a California corporation engaged in the business of being, "A Proven Digital Transformation Partner for Customer Experience Solutions, Specialized by Industry. Engineered for Transformation."  Suavis' principal place of business is located at 5201 Great

America Parkway, Suite 320, Santa Clara, CA 95054. Kapadia is the Chief Executive Officer, Secretary, and Chief Financial Officer of Suavis.

## JURISDICTION AND VENUE

5.     The Court has original jurisdiction over this cause pursuant to 28 U.S.C. § 1331 because this matter arises under the laws of the United States, specifically the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. ("Defend Trade Secrets Act"). This Court has supplemental jurisdiction over Plaintiffs' pendant state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are related to Plaintiffs' federal claim such that they are part of the same case or controversy.

6.     This Court further has jurisdiction over this cause because the Parties agreed to an exclusive forum selection clause selecting this Court as the appropriate forum for the disputes arising in this action. (*See* Non-Competition Agreement, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by reference, ¶ 5.7 ("The state and federal courts within Chicago, Illinois, have exclusive jurisdiction over any controversy or claim arising out of or related to this Agreement . . . as well as any non-contractual claims arising out of the parties' relationship."); Purchase Agreement, a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by reference, ¶ 11.14 ("The parties to this Agreement submit to the exclusive jurisdiction of the state courts located in Chicago, Illinois or the courts of the United States located in Chicago, Illinois in respect to the interpretation and enforcement of the provisions of this Agreement and any related agreement, certificate or other document delivered in connection herewith.").)

7.     Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §§ 1391(b)-(c) because Defendants are subject to personal jurisdiction in this Court, and

further because Defendants agreed to submit to the jurisdiction of this Court pursuant to the Non-Competition Agreement and the Purchase Agreement as set forth in Paragraph 6, above.

## FACTUAL ALLEGATIONS

### A. AST Acquires Serene AST And Enters Into The Pertinent Agreements With Kapadia.

8.      In or around August 2015, AST entered into acquisition discussions with Serene AST's predecessor company, Serene Corporation.  At the time of these discussions, Kapadia was one of four shareholders of Serene Corporation.

9.      Following extensive negotiations, due diligence by the Parties, and related activities, AST agreed to purchase all of the equity of Serene AST, which was the successor entity of Serene Corporation by conversion. Serene AST's sole member was VANP, Inc., a California corporation ("VANP"). Kapadia owns 46.7% of VANP.

10.      AST purchased all of the equity securities of Serene AST from VANP, through a purchase agreement dated as of September 14, 2015, and AST obtained ownership of all of the equity securities, intellectual property assets, and other various assets of the entity that was previously known as Serene Corporation, subject to the terms and conditions outlined therein.  (*See* Purchase Agreement, Exhibit 2.)

11.      Kapadia executed the Purchase Agreement in his individual capacity as a stockholder.

12.      As set forth more fully below, Kapadia obtained over four million dollars in total compensation from the transaction based, in part, upon his promises and covenants made in his Employment Agreement and Non-Competition Agreement.

13.  As a part of the transaction referenced above, Serene AST retained three of Serene Corporation's former shareholders as employees of Serene AST. One of those individuals retained as an employee of Serene AST was Kapadia.

14.  In consideration for Kapadia's employment by Serene AST and the compensation provided incidental thereto, including, but not limited to, Kapadia's salary, benefits, and bonuses, Kapadia executed an Employment Agreement with Serene AST. The Employment Agreement was made effective as of September 14, 2015, and later amended on January 10, 2017. (*See* Employment Agreement and First Amendment thereto, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein by reference.)

15.  The Employment Agreement provided, among other things, that:

> 1.1  <u>Employment.</u>  . . . Employee shall devote his entire business time, attention, skill and energy to the business of [Serene AST] and to performing such duties; shall use his best efforts to promote the success of [Serene AST's] business and shall cooperate fully with [Serene AST] in the advancement of the best interests of the Company.

> 5.2.1  <u>Confidentiality.</u>  a. . . . Employee shall hold in confidence Confidential Information . . . and shall not disclose Confidential Information . . . or use Confidential Information . . . other than in connection with the performance of his duties hereunder. . . . "Confidential Information" means any and all: (A) trade secrets . . . (B) information concerning the business and affairs of AST.

> c.  Employee shall not remove from Company's premises . . . any document . . . device, or computer software or code. . . . Employee recognizes that, as between [Serene AST] and employee, all of the Proprietary Items . . . are the exclusive property of [Serene AST].

16.  The Employment Agreement also contains a Non-Competition and Non-Interference Section, which provides, among other things, that Kapadia agreed: (a) Kapadia was an equity owner and a stock holder in Serene Corporation and Serene AST (via owning 46.7% of VANP) prior to the acquisition by AST; (b) that Kapadia's employment by Serene AST after the

transaction induced AST to consummate the September 14, 2015 Purchase Agreement; (c) that Kapadia agreed not to own, finance, serve as an officer or director of, or lend his name to any business in competition with Serene AST as defined by the restrictive covenant in the Employment Agreement; (d) that Kapadia agreed not be employed by any company in business in competition with Serene AST as defined by the restrictive covenant in the Employment Agreement; (e) that Kapadia agreed not to solicit Serene AST's customers as defined by the restrictive covenant in the Employment Agreement; and (f) that Kapadia agreed not to solicit and/or poach Serene AST's employees as defined by the restrictive covenant in the Employment Agreement. (*See* Employment Agreement, Section 6, Exhibit 3.)

17.     During all times relevant since the incorporation of Suavis and prior to Kapadia's termination, Serene AST provided Kapadia with a substantial salary of $250,000.00 per year, as well as an annual bonus of $200,000.00 based upon performance targets, along with other benefits, pursuant to the Employment Agreement. (*See* First Amendment to Employment Agreement, Exhibit 3.)

18.     In addition to the Employment Agreement, Kapadia also executed a separate Non-Competition Agreement with AST on September 14, 2015. (*See* Exhibit 1.)

19.     The Non-Competition Agreement specifically states that its execution was "to induce [AST] to enter into the [September 14, 2015] Purchase Agreement and to consummate the transactions contemplated by the Purchase Agreement, and to enable [AST] to secure more fully the benefits of the acquisition and to protect and preserve the business and goodwill associated with the business of [Serene AST]." (Exhibit 1.)

20.     The Non-Competition Agreement sets forth, in a similar manner to the Employment Agreement, that: (a) Kapadia was an equity owner and a stock holder in Serene Corporation and

Serene AST prior to the acquisition by AST; (b) that Kapadia's employment by Serene AST after the transaction induced AST to consummate the September 14, 2015 Purchase Agreement; (c) that Kapadia agreed not to own, finance, serve as an officer or director of, or lend his name to any business in competition with Serene AST as defined by the restrictive covenant in the Employment Agreement; (d) that Kapadia agreed not be employed by any company in business in competition with Serene AST as defined by the restrictive covenant in the Employment Agreement; (e) that Kapadia agreed not to solicit Serene AST's customers as defined by the restrictive covenant in the Employment Agreement; and (f) that Kapadia agreed not to solicit and/or poach Serene AST's employees as defined by the restrictive covenant in the Employment Agreement. (*See* Non-Competition Agreement, Sections 1.2, 2, Exhibit 1.)

**B. AST and Serene AST's Business Model and Trade Secrets.**

21. Plaintiffs required Kapadia to enter into the Employment Agreement and the Non-Competition Agreement because, among other things, they are in the business of providing information technology solutions which are not publicly available for purchase.

22. Plaintiffs are engaged in the business of systems integration, consulting, and customized information technology services relating to Customer Relationship Management ("CRM"), which is also called Customer Experience, (both SaaS and On Premise), MDM, Master Data Management (both SaaS and On Premise), BI, Hyperion Enterprise Performance Management, EAI (Fusion Middleware Technologies), Identity Management and Enterprise Content Management. Plaintiffs operate in North America, Australia, India, Singapore and the United Kingdom.

23. As a result of Plaintiffs' experience, expertise, and confidential and proprietary vertical templates used to customize customer experience solutions, including, but not limited to,

Plaintiffs' vertical market presence in the professional services, local government and other public sector, engineering, construction, real estate, health sciences, technology, hospitality, non-profit, telecommunications, and other industries, Plaintiffs have developed significant trade secrets and other intellectual property, including, but not limited to, software code, design, and other related customization of certain software, which Plaintiffs deploy on projects for their customers to gain a competitive advantage in the information technology sector.

24.     These customized vertical templates, as well as Plaintiffs' customer experience solution skills offered to Plaintiffs' clients through Plaintiffs' customization of the software products over years of research and development effort, are not publicly available for purchase and are developed as one-of-a-kind products for use only for Plaintiffs' customers.  Plaintiffs' customized software solutions are highly confidential and proprietary trade secrets of Plaintiffs that are not available for public use or purchase.

25.     Plaintiffs take all reasonably prudent steps to keep the information identified in Paragraphs 22-24 confidential, including, but not limited to, requiring employees with access to this information to execute confidentiality and non-disclosure agreements, such as those executed by Kapadia, and restricting employee access to said information to the employees who need such information to perform their job duties.

26.     As an executive of Serene AST, Kapadia had access to Plaintiffs' customized software products set forth above in Paragraphs 22-24.

27.     Plaintiffs also maintain a confidential pricing structure for responding to Requests for Proposals submitted by Plaintiffs' customers.  Plaintiffs developed their pricing structure over a term of years, and it offers Plaintiffs a competitive advantage in the marketplace.  Plaintiffs'

pricing structure is a highly confidential and proprietary trade secret of Plaintiffs that is not available for public use.

28.     Plaintiffs take all reasonably prudent steps to keep their pricing information confidential, including, but not limited to, requiring employees with access to this information to execute confidentiality and non-disclosure agreements, such as those executed by Kapadia, and restricting employee access to said information to the employees who need such information to perform their job duties, such as executive and sales employees.

29.     As an executive of Serene AST, Kapadia had access to Plaintiffs' pricing structure, including confidential schemes for providing statements of work, master services agreements, delivery templates, and other confidential and competitive critical revenue related documents.

30.     Plaintiffs also maintain confidential customer lists.  Plaintiffs developed and obtained their customers over a term of years and the ability to continue to service existing customers with updates and other services based upon internal company knowledge of the customers' needs and prior request provides Plaintiffs a competitive advantage in the marketplace. Plaintiffs' customer lists are a highly confidential and proprietary trade secret of Plaintiffs that are not available for public use.

31.     Plaintiffs take all reasonably prudent steps to keep their customer information confidential, including, but not limited to, requiring employees with access to this information to execute confidentiality and non-disclosure agreements, such as those executed by Kapadia, and restricting employee access to said information, to the employees who need such information to perform their job duties, such as executive and sales employees.

32.     As an executive of Serene AST, Kapadia had access to Plaintiff's customer lists, including customer contact information.

33. Plaintiffs' business is highly specialized, technical and competitive. Confidential information about their customized software, pricing structure, as well as the customer information and contact lists, are critical to Plaintiffs' success in the marketplace and are kept strictly confidential for this very reason.

**C. Plaintiffs Become Aware Of Kapadia's Nefarious Conduct.**

34. Plaintiffs first became aware of Kapadia's nefarious conduct on or around December 22, 2018, when Kapadia inadvertently forwarded an e-mail message to an employee of Plaintiffs containing an e-mail signature block for Kapadia's new company, Suavis.

35. The employee promptly contacted Fatima Beach ("Beach"), AST's Senior Vice President, Human Resources, and advised her of the information.

36. After receipt of the information, Beach immediately began a review of any activities of Kapadia and Suavis that would violate Kapadia's obligations to Plaintiffs.

37. Beach's work in this regard revealed that Kapadia incorporated Suavis as a California corporation on or around June 13, 2017. (*See* Articles of Incorporation, a true and correct copy of which is attached as Exhibit 4, and Secretary of State Statement of Information, a true and correct copy of which is attached hereto as Exhibit 5.)

38. Kapadia is listed as the Chief Executive Officer, Chief Financial Officer, Secretary, and sole Director of Suavis. (Exhibit 5.)

39. The type of business is listed as "IT Consulting." (Exhibit 5.)

40. The review also revealed that Suvais is currently advertising job postings on the website Glassdoor. Specifically, the job posting on Glassdoor seeks a "Principal Consultant" with the following experience:

    a. Significant experience on a CRM platform;

      b.    Microsoft CRM, SAP CRM, I SalesLogix, Oracle On-Demand, Oracle Sales Cloud, Oracle Service Cloud, SugarCRM or similar.

41.    The Glassdoor post seeks consultants for positions at Suavis that directly compete with Plaintiffs.

42.    Moreover, Beach discovered that three former employees of Serene AST, Amit Tiwari, Satish Das, and Sudeep Pendharkar, who all resigned their employment with Serene AST's India-based affiliate in or around June and July 2017, posted on their public LinkedIn profiles that they are employed by Suavis, having begun their employment in June through August of 2017. The descriptions that these former employees posted on their LinkedIn pages demonstrate that they are directly competing with Plaintiffs' business as information technology consultants in the customized customer experience application space.

43.    On information and belief, all three employees were improperly recruited to Suavis by Kapadia.

44.    Shortly thereafter, Serene AST discovered that yet another Serene AST employee located at Serene AST's India-based affiliate, Sudarashan Ramu, had resigned his employment with Serene AST and is now employed by Suavis. Ramu is employed in a position directly competing with Plaintiffs' business as information technology consultants in the customized customer experience application space.

45.    On information and belief, Ramu was also improperly recruited to Suavis by Kapadia.

46.    Additionally, Serene AST's Pennsylvania-based employee, Anuradha Saripalli, also resigned her employment with Serene AST in or around June, 2017.

47.    Shortly after Plaintiffs became aware of Kapadia's nefarious conduct, Saripalli sent a text message to Vinay Saini and Niken Patel, the two remaining Serene AST executives, stating,

"Hope you are doing well. Sorry I could not connect earlier as I wasn't in a position to let you know where I moved but guess now you know. Hope to keep in touch. Thanks!"

48.     Saripalli is now employed by Suavis in Pennsylvania.

49.     On information and belief, Saripalli was also improperly recruited to Suavis by Kapadia.

50.     All of the employees set forth above who resigned their employment to work with Suavis were trained on Plaintiffs' confidential and proprietary vertical templates, had assisted Plaintiffs in creating confidential and proprietary information to use to Plaintiffs' benefit, and were leading projects for Plaintiffs valuable customers. The departure of these individuals due to Kapadia's wrongful conduct immediately impacted customer relationships and damaged Plaintiffs' valuable customer accounts.

51.     Even worse still, Plaintiffs have discovered that Suavis has solicited Plaintiffs' customers and that some customers of Plaintiffs have already begun to use Suavis for their information technology consulting needs, directly damaging Plaintiffs' ability to collect revenue and provide products and consulting services to its customers.

52.     For example, Plaintiffs have confirmed that one of Plaintiffs' major accounts, a major United States based telecommunications company, has been improperly solicited by, and potentially poached by Kapadia and Suavis.

53.     On or around Friday, January 26, 2018, Plaintiffs received an e-mail, sent to Kapadia's Serene AST e-mail account, from the customer's information technology department, requesting that Kapadia provide additional information to the customer to facilitate the "change from Serene to Suavis."

54. This e-mail from the customer confirms without doubt that Kapadia and Suavis are engaged in an ongoing attempt to, and already have, interfered with Plaintiffs' customers and future business opportunities.

55. Thus, Kapadia and Suavis have already usurped, and are continuing to attempt to usurp, valuable business opportunities of Plaintiffs and are interfering with Plaintiffs' relationships with their customers.

56. In addition, Kapadia has nefariously and wrongfully interfered with Plaintiffs' relationship with one of its most important partners, Oracle.

57. Oracle and Plaintiffs are parties to a business relationship whereby Oracle recognizes Plaintiffs as a "Platinum Partner." As a part of this relationship, Oracle assists Plaintiffs with the sourcing of certain business opportunities and projects. Through its contractual relationship with its business partners, Plaintiffs earn substantial revenue through licensing fees and/or service fees.

58. In addition to poaching Plaintiffs' customers and employees, Kapadia and Suavis have engaged in a campaign to undermine Plaintiffs' relationship with Oracle and destroy that partnership.

59. For example, Kapadia has contacted, during his employment with Plaintiffs, and continues to contact after his termination, certain prospective customers of Plaintiffs for which he was tasked, as an employee of Plaintiffs, to serve as sales lead and relationship contact between the prospective customer and Oracle.

60. Rather than assisting Plaintiffs in retaining the prospective customer(s), Kapadia actually suggested to one or more prospective customers of Plaintiffs that they utilize a different customer experience solution that he would offer through Suavis, interfering with Plaintiffs'

relationship with Oracle and the prospective customer in direct violation of Section 6.2.4 of his employment agreement and his duty of loyalty to Plaintiffs.

61.     Plaintiffs' review of Kapadia and Suavis' misconduct is ongoing and Plaintiffs have likely only scratched the surface of the wrongdoing by Kapadia over the last seven to eight months as he has worked to set up Suavis and begin competing with Plaintiffs, all while still employed by Plaintiffs.

**D. Plaintiffs Terminate Kapadia Who Immediately Leaves The United States In Possession Of Company Property.**

62.     After conducting the initial stages of her review into Kapadia's wrongdoing, AST requested that Kapadia appear in person at AST headquarters in Naperville, Illinois for a meeting.

63.     Kapadia traveled from California to Illinois for the meeting.  On January 9, 2018, AST's Chief Executive Officer, Pravin Kumar, and Vice President of Human Resources, Fatima Beach, confronted Kapadia regarding his activities, including, but not limited to, the breach of his Employment Agreement, Non-Compete Agreement, obligations under the Purchase Agreement, and other wrongful conduct he engaged in by setting up and operating Suavis in direct competition with AST and Serene AST, all while still employed by Serene AST as Executive Vice President and receiving his salary and benefits.

64.     Kapadia did not deny setting up Suavis, but rather falsely represented that he had incorporated the business "as a favor" for a friend and was simply serving as the company's agent in the United States.

65.     Kumar and Beach hand delivered Kapadia a Termination Letter at the January 9, 2018 meeting terminating his employment immediately, for cause, pursuant to the Employment Agreement.  (*See* Termination Letter, a true and correct copy of which is attached hereto as Exhibit 6.)

14

66.     As part of the termination meeting on January 9, 2018, Beach requested, and the Termination Letter demanded, that Kapadia return any and all company property in his possession, including, but not limited to, Kapadia's company laptop, building keycard to access Serene AST's offices in Santa Clara, California, and his office key.  Kapadia indicated to Beach that he, "did not bring his laptop with him" to the meeting in Illinois, but would surrender it to Serene AST's office manager at the California office upon his return to California.

67.     Kapadia's company laptop contains confidential and proprietary trade secret information of Plaintiffs, including, but not limited to, customized software coding, configurations, processes, and other sensitive and proprietary pricing schemes and customer information.

68.     Unsurprisingly, the next day on January 10, 2018, Kapadia ignored Plaintiffs' multiple attempts to contact him through Plaintiffs' administrative assistant in the California office. Kapadia further ignored Beach's follow-up attempts to contact him and arrange a convenient time to surrender the company property.

69.     On the morning of January 11, 2017, Kapadia called Beach and falsely stated that he would contact Plaintiffs' administrative assistant some time during the morning of January 11, 2018 to arrange a time to drop off his company property.  He also admitted to Beach that he was planning to leave the United States for India "this morning."

70.     Kapadia failed to drop off his company property or make any arrangements to return the company property, including his laptop which contains Plaintiffs' confidential and proprietary trade secret information.  Thus, Kapadia departed the United States for India in possession or control of Plaintiffs' company property and valuable, confidential, and proprietary trade secret information.

71.     Given Kapadia's false representations to Plaintiffs that he would surrender his company property, Plaintiffs, through their attorneys, sent a cease and desist letter to Kapadia on January 12, 2018 via e-mail and first-class mail.  In the letter, Plaintiffs demanded that Kapadia cease and desist from further violating his Employment Agreement, his Non-Competition Agreement, and the Purchase Agreement.  The letter further demanded the immediate return of Plaintiffs' company property, including, but not limited to, the laptop.  (*See* Cease and Desist Letter, a true and correct copy of which is attached hereto as Exhibit 6.)

72.     Kapadia has failed to return Plaintiffs' company property since the issuance of the cease and desist letter.

73.     Kapadia maintains in his possession or control all of the information provided to him by Plaintiffs or to which he had access in the course of his employment and continues to utilize this information to compete with Plaintiffs and poach Plaintiffs' employees to Plaintiffs' financial detriment.

74.     Without the intervention of the Court, Plaintiffs will suffer irreparable harm by the further loss and unauthorized use of their trade secrets, confidential and proprietary information, know how, other company property, and the further poaching of their employees.

75.     Plaintiffs have no adequate remedy at law to prevent the dissemination of their confidential and proprietary trade secrets or the continued poaching of their employees and thus request injunctive relief as set forth below.

## COUNT I
### Defend Trade Secrets Act – All Defendants
### (Violation of 18 U.S.C. § 1836)

76.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

77.     Plaintiffs' confidential and proprietary information includes trade secrets that derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

78.     Plaintiffs have taken and continue to undertake reasonable efforts to maintain the confidential and proprietary nature of the information which comprise their trade secrets.

79.     Kapadia has used Plaintiffs' confidential and proprietary information constituting their trade secrets, and has provided such information to Suavis to set up and begin operating Suavis in direct competition with Plaintiffs on an ongoing basis, since at least June 2017.

80.     Suavis, through Kapadia, acquired Plaintiffs' confidential and proprietary information through improper means and knew, or had reason to know, that such information was obtained in violation of Kapadia's duties and obligations to Plaintiffs.

81.     Defendants' misappropriation of Plaintiffs' trade secrets has caused and continues to cause Plaintiffs damages and irreparable injury, as set forth herein.

82.     Defendants' misappropriation is willful and malicious and thereby entitles Plaintiffs to an award of exemplary damages pursuant to the Defend Trade Secrets Act.

83.     Defendants' misappropriation of Plaintiffs' trade secrets and confidential information has caused, and will continue to cause, Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Defendants from further use or disclosure of Plaintiffs' trade secrets is necessary to provide Plaintiffs with complete relief.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully request that this Court enter judgment their favor and against Defendants and grant Plaintiffs the following relief:

(a) Restraining and enjoining Defendants and those people and entities acting in concert with them from possessing, disseminating, disclosing, copying, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Plaintiffs, pursuant to 18 U.S.C. § 1836(b)(3)(A)(i);

(b) Requiring Defendants and those people and entities acting in concert with them, including but not limited to all former employees of Plaintiffs working for Suavis, to affirmatively return any company property or information deemed to be the confidential and proprietary property of Plaintiffs in their possession, custody, or control, including, but not limited to, the laptop and other company property of Plaintiffs;

(c) Requiring Defendants and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, to make available for inspection, all personal storage devices, including, but not limited to, all laptop computers, notebook computers, desktop computers, tablets, hand-help computers, computer disks, compact disks, hard drives, magnetic storage media, optical storage media, tapes, zip drives, flash drives, telephones, cellular telephones, PDAs, smartphones, iPhones, iPods, iPads, electronic music players, e-book readers, hand-held computer devices, Blackberries, digital cell phones, cell phones and pagers in Defendants' possession, and thereafter to permanently delete and/or destroy any electronic and/or paper copies of any such information which is the property of Plaintiffs, pursuant to 18 U.S.C. § 1836(b)(3)(A)(ii);

(d) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Defendants' acts in violation of the DTSA;

(e) Compensatory damages for the actual losses incurred due to Defendants' misappropriation of confidential and proprietary information;

(f) Damages based upon the unjust enrichment to Defendants based upon their actions;

(g) Exemplary damages pursuant to the DTSA;

(h) Plaintiffs' attorneys' fees;

(i) Applicable interest and costs; and

(j) Any other and further relief that the Court deems equitable and just.

**COUNT II**
**Illinois Trade Secrets Act – All Defendants**
**(Violation of 765 ILCS 1065/1 *et seq.*)**

84.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85.    Plaintiffs' confidential and proprietary information includes trade secrets that derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

86.    Plaintiffs have taken and continue to undertake reasonable efforts to maintain the confidential and proprietary nature of the information which comprise their trade secrets.

87.    Kapadia has used Plaintiffs' confidential and proprietary information constituting their trade secrets, and has provided such information to Suavis to set up and begin operating Suavis in direct competition with Plaintiffs on an ongoing basis, since at least June 2017.

88.    Suavis, through Kapadia and employees poached by him from Plaintiffs, acquired Plaintiffs' confidential and proprietary information through improper means and knew, or had reason to know, that such information was obtained in violation of Kapadia's duties and obligations to Plaintiffs.

89.     Defendants' misappropriation of Plaintiffs' trade secrets has caused, and continues to cause, Plaintiffs' damages and irreparable injury, as set forth herein.

90.     Defendants' misappropriation is willful and malicious and thereby entitles Plaintiffs to an award of exemplary damages pursuant to the Illinois Trade Secrets Act.

91.     Defendants' misappropriation of Plaintiffs' trade secrets and confidential information has caused, and will continue to cause, Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Defendants from further use or disclosure of Plaintiffs' trade secrets is necessary to provide Plaintiffs with complete relief.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully request that this Court enter judgment in their favor and against Defendants and grant Plaintiffs the following relief:

(a) Restraining and enjoining Defendants and those people and entities acting in concert with them from possessing, disseminating, disclosing, copying, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Plaintiffs, pursuant to 765 ILCS 1065/3(a);

(b) Requiring Defendants and those people and entities acting in concert with them, including but not limited to all former employees of Plaintiffs working for Suavis, to affirmatively return any company property or information deemed to be the confidential and proprietary property of Plaintiffs in their possession, custody, or control, including, but not limited to, the laptop and other company property of Plaintiffs;

(c) Requiring Defendants and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, to make available for inspection, all personal storage devices, including but not limited to all laptop computers, notebook computers, desktop computers, tablets, hand-help computers, computer disks, compact disks, hard drives, magnetic storage media, optical storage media, tapes, zip drives, flash drives, telephones, cellular telephones, PDAs, smartphones, iPhones, iPods, iPads, electronic music players, e-book readers, hand-held computer devices, Blackberries, digital cell phones, cell phones and pagers in Defendants' possession, and thereafter to permanently delete and/or destroy any electronic and/or paper copies of any such information which is the property of Plaintiffs, pursuant to 765 ILCS 1065/3(c);

(d) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Defendants' acts in violation of the ITSA;

(e) Compensatory damages for the actual losses incurred due to Defendants' misappropriation of confidential and proprietary information;

(f) Damages based upon the unjust enrichment to Defendants based upon their actions;

(g) Exemplary damages pursuant to the ITSA;

(h) Plaintiffs' attorneys' fees;

(i) Applicable interest and costs; and

(j) Any other and further relief that the Court deems equitable and just.

## COUNT III
### Breach of Contract – Breach of Employment Agreement – Defendant Kapadia

92. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. Kapadia's Employment Agreement is a valid and enforceable contract, which Kapadia entered voluntarily and in consideration for, among other things:

      a.      Kapadia's salary of $250,000.00 per year;
      b.      AST's contribution to Kapadia's health insurance;
      c.      The inducement of AST to consummate the Purchase Agreement and make all required payments thereunder, including the several million dollar cash payments made for the benefit of Kapadia consistent with his equity stake in Serene AST, LLC (formerly known as, Serene Corporation).

94. Serene AST has performed all conditions, covenants, and promises required on its part pursuant to the Employment Agreement.

95. The restrictive covenants contained in the Employment Agreement described above are reasonable and necessary to protect Plaintiffs' legitimate business interests including, but not limited to, employee relationships, relationships with business partners, customer relationships, goodwill, know-how, confidential and proprietary information and trade secret information, and the benefit of the bargain that Plaintiffs received when entering the September 14, 2015 Purchase Agreement.

96. The restrictive covenants contained in the Employment Agreement are reasonably tailored to protect Plaintiffs' legitimate interests and do not impose an undue burden on Kapadia.

97. The Employment Agreement is not injurious to public welfare. The issuance of an injunction would promote the public interest by preserving the status quo during this litigation and allowing Plaintiffs to continue their valuable customer relationships and retain their valuable employees, as well as safeguarding confidential information and preventing unethical conduct.

98. Kapadia has violated, and will continue to ignore, his obligations under the Employment Agreement as described more fully above by his ongoing breach of the Non-Disclosure Covenant, Employee Inventions Covenant, Non-Competition and Non-Interference Covenants, including, but not limited to, his conversion of Plaintiffs' trade secrets and other

22

company property, his solicitation and poaching of Plaintiffs' employees and customers for the benefit of Suavis and the detriment of Plaintiffs, and his ongoing direct competition with Plaintiffs through Suavis.

99. Kapadia's misappropriation of Plaintiffs' trade secrets and confidential information, and his actions in directly competing with Plaintiffs working for and acting as the Chief Executive Officer of Suavis has caused, and will continue to cause, Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Kapadia from further use or disclosure of Plaintiffs' trade secrets and prohibiting him from violating his non-competition and non-solicitation obligations is necessary to provide Plaintiffs with complete relief.

100. Kapadia's conduct was and is willful and malicious.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully request that this Court enter judgment in their favor and against Kapadia and grant Plaintiffs the following relief:

(a) Restraining and enjoining Kapadia and those people and entities acting in concert with them from possessing, disseminating, disclosing, copying, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which is the property of Plaintiffs, pursuant to Sections 5-6 of Kapadia's Employment Agreement and applicable common law;

(b) Requiring Kapadia and those people and entities acting in concert with them, including but not limited to all former employees of Plaintiffs working for Suavis, to affirmatively return any company property or information deemed to be the confidential and proprietary property of Plaintiffs in their possession, custody, or

control, including, but not limited to, the laptop and other company property of Plaintiffs;

(c)  Requiring Kapadia and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, to make available for inspection, all personal storage devices, including, but not limited to, all laptop computers, notebook computers, desktop computers, tablets, hand-help computers, computer disks, compact disks, hard drives, magnetic storage media, optical storage media, tapes, zip drives, flash drives, telephones, cellular telephones, PDAs, smartphones, iPhones, iPods, iPads, electronic music players, e-book readers, hand-held computer devices, Blackberries, digital cell phones, cell phones and pagers in Defendants' possession, and thereafter to permanently delete and/or destroy any electronic and/or paper copies of any such information which is the property of Plaintiffs, pursuant to Section 5 of Kapadia's Employment Agreement and applicable common law;

(d) Restraining and enjoining Kapadia and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, from destroying any and all records, documents or deleting any electronic communications in any way evidencing Kapadia's breach of his obligations of confidentiality, non-competition, non-solicitation and non-interference under Section 5 of Kapadia's Employment Agreement and applicable common law, including, but not limited to communications with Plaintiffs' customers or prospective customers; and Suavis' aiding, abetting or inducing such breaches;

(e) Restraining and enjoining Kapadia from owning, financing, serving as an officer, director, or member of, or lending his name to Suavis Corporation in the Restricted Area as defined by the Employment Agreement, pursuant to Section 6.2.1 of the Employment Agreement and applicable common law until further order of Court;

(f) Restraining and enjoining Kapadia and those people and entities acting in concert with him, including, but not limited to, Suavis, from soliciting business in the Restricted Area as defined by the Employment Agreement, pursuant to Section 6.2.3 therein;

(g) Restraining and enjoining Kapadia and those people and entities acting in concert with him from soliciting and/or poaching Plaintiffs' employees in violation of Section 6.2.4 of the Employment Agreement and applicable common law;

(h) Restraining and enjoining Kapadia and those people and entities acting in concert with him, including, but not limited to Suavis, from interfering with Plaintiffs' relationships with their business partners, including but not limited to Oracle, SugarCRM, Salesforce.com, Kronos and any prospective customers referred to Plaintiffs by those business partners;

(i) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Kapadia's acts in violation of his Employment Agreement and applicable common law;

(j) Compensatory damages for the actual losses incurred due to Kapadia's breach of his Employment Agreement;

(k) Punitive damages due to the willful and malicious nature of Kapadia's conduct;

(l) Applicable interest and costs; and

(m) Any other and further relief that the Court deems equitable and just.

<u>COUNT IV</u>
**Breach of Contract – Breach of Non-Competition Agreement – Defendant Kapadia**

101.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 100 as if fully set forth herein.

102.    Kapadia's Non-Competition Agreement is a valid and enforceable contract, which Kapadia entered voluntarily and in consideration for, among other things:

> a.    The inducement of AST to consummate the Purchase Agreement and make all required payments thereunder, including the several million dollar cash payment made to Kapadia consistent with his equity stake in Serene AST, LLC (formerly known as, Serene Corporation).

103.    AST has performed all conditions, covenants, and promises required on its part pursuant to the Non-Competition Agreement.

104.    The restrictive covenants contained in the Non-Competition Agreement described above are reasonable and necessary to protect Plaintiffs' legitimate business interests including, but not limited to, employee relationships, customer relationships, goodwill, know-how, confidential and proprietary information and trade secret information, and the benefit of the bargain that Plaintiffs received when entering the September 14, 2015 Purchase Agreement.

105.    The restrictive covenants contained in the Non-Competition Agreement are narrowly tailored to protect Plaintiffs' legitimate interests and do not impose an undue burden on Kapadia.

106.    The Non-Competition Agreement is not injurious to public welfare. The issuance of an injunction would promote the public interest by preserving the status quo during this litigation and allowing Plaintiffs to continue their valuable customer relationships and retain their valuable employees, as well as safeguarding confidential information and preventing unethical conduct.

26

107. Kapadia has violated, and will continue to ignore, his obligations under the Non-Competition Agreement as described more fully above by his ongoing breach of the Restrictive Covenants, including, but not limited to, Kapadia's service as the owner, founder, officer and director of Suavis, his employment by Suavis, Kapadia's breach of the non-competition, and non-solicitation covenants through his conversion of Plaintiffs' trade secrets and other company property for use by Suavis to compete with Plaintiffs, his solicitation and poaching of Plaintiffs' employees and customers for the benefit of Suavis and the detriment of Plaintiffs, and his ongoing direct competition with Plaintiffs through Suavis.

108. Kapadia's misappropriation of Plaintiffs' trade secrets, confidential information, and his actions in directly competing with Plaintiffs working for and acting as the Chief Executive Officer of Suavis has caused, and will continue to cause, Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Kapadia from further use or disclosure of Plaintiffs' trade secrets and prohibiting him from violating his non-competition and non-solicitation obligations is necessary to provide Plaintiffs with complete relief.

109. Kapadia's conduct was and is willful and malicious.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully request that this Court enter judgment in their favor and against Kapadia and grant Plaintiffs the following relief:

    (a) Restraining and enjoining Kapadia and those people and entities acting in concert with them from possessing, disseminating, disclosing, copying, transmitting, using, secreting, or otherwise accessing any confidential and proprietary information which

is the property of Plaintiffs, pursuant to Section 1.2 of Kapadia's Non-Competition Agreement and applicable common law;

(b)  Requiring Kapadia and those people and entities acting in concert with them, including but not limited to all former employees of Plaintiffs working for Suavis, to affirmatively return any company property or information deemed to be the confidential and proprietary property of Plaintiffs in their possession, custody, or control, including, but not limited to, the laptop and other company property of Plaintiffs;

(c)  Requiring Kapadia and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, to make available for inspection, all personal storage devices, including but not limited to all laptop computers, notebook computers, desktop computers, tablets, hand-help computers, computer disks, compact disks, hard drives, magnetic storage media, optical storage media, tapes, zip drives, flash drives, telephones, cellular telephones, PDAs, smartphones, iPhones, iPods, iPads, electronic music players, e-book readers, hand-held computer devices, Blackberries, digital cell phones, cell phones and pagers in Defendants' possession, and thereafter to permanently delete and/or destroy any electronic and/or paper copies of any such information which is the property of Plaintiffs, pursuant to Section 1.2 of Kapadia's Non-Competition Agreement and applicable common law;

(d)  Restraining and enjoining Kapadia and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, from destroying any and all records, documents or deleting any electronic

communications in any way evidencing Kapadia's breach of his obligations of confidentiality, non-competition, non-solicitation and non-interference under Section 1.2 of Kapadia's Non-Competition Agreement and applicable common law, including, but not limited to communications with Plaintiffs' customers or prospective customers; and Suavis' aiding, abetting or inducing such breaches;

(e) Restraining and enjoining Kapadia from owning, financing, serving as an officer, director, or member of, or lending his name to Suavis Corporation in the Restricted Area as defined by the Employment Agreement, pursuant to Section 2.1(a)-(b) of the Non-Competition Agreement;

(f) Restraining and enjoining Kapadia and those people and entities acting in concert with him, including, but not limited to, Suavis, from soliciting business in the Restricted Area as defined by the Employment Agreement, pursuant to Section 2.1(c) therein;

(g) Restraining and enjoining Kapadia and those people and entities acting in concert with him from soliciting and/or poaching Plaintiffs' employees in violation of Section 2.1(d) of the Non-Competition Agreement;

(h) Restraining and enjoining Kapadia and those people and entities acting in concert with him, including, but not limited to Suavis, from interfering with Plaintiffs' relationships with their business partners, including but not limited to Oracle, SugarCRM, Salesforce.com, Kronos, and any prospective customers referred to Plaintiffs by those business partners;

(i) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Kapadia's acts in violation of Sections 5-6 of his Employment Agreement and applicable common law;

(j) Compensatory damages for the actual losses incurred due to Kapadia's breach of his Employment Agreement;

(k) Punitive damages due to the willful and malicious nature of Kapadia's conduct;

(l) Applicable interest and costs; and

(m) Any other and further relief that the Court deems equitable and just.

### COUNT V
**Breach of Fiduciary Duty – Duty of Loyalty – Defendant Kapadia**

110.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 109 as if fully set forth herein.

111.    At all relevant times prior to his termination, Kapadia was an employee and agent of Serene AST pursuant to his Employment Agreement.

112.    As an employee and agent of Serene AST, Kapadia owed Serene AST a fiduciary duty of loyalty.

113.    While employed by Serene AST, Kapadia, through his actions as described more fully above and incorporated herein, intentionally and willfully violated his duty of loyalty to Serene AST by taking actions against Serene AST's interest, including, but not limited to, incorporating Suavis, a competing company, acting as its Chief Executive Officer and sole director, among other positions, since approximately June 2017, competing with Serene AST directly through Suavis in violation of his duty of loyalty to Serene AST by, among other things, poaching Serene AST clients, poaching Serene AST employees, soliciting Serene AST clients and prospective clients, and attempting to divert further business and revenue to Suavis from Serene AST.

114.    In addition, in violation of his duty of loyalty as an employee of Serene AST, Kapadia was, on a regular and ongoing basis, engaged in providing information to Suavis that has

aided Suavis in usurping Plaintiffs' business opportunities and economic advantage in providing products and service to customers that would otherwise be provided by Plaintiffs.

115. During the time that Kapadia was actively in breach of his duty of loyalty to Serene AST, from approximately June 2017 to the time of his termination on January 9, 2018, Serene AST compensated Kapadia handsomely with his salary and benefits in an amount of over $150,000.00 in salary as well as contributions to his healthcare, among other benefits.

116. In the absence of Kapadia's actions, Suavis would not be able to provide products and services to Plaintiffs' valuable customers.

117. As a direct and proximate result of this breach, without justification or privilege, Plaintiffs have been severely and irreparably damaged and Kapadia has unlawfully profited and benefited.

118. Kapadia's actions were willful and malicious and undertaken with reckless indifference to Plaintiffs' rights.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully requests that this Court enter judgment in its favor and against Kapadia and grant Plaintiffs the following relief:

(a) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Kapadia's breach of his duty of loyalty to Serene AST;

(b) Compensatory damages for the actual losses incurred due to Kapadia's breach of his duty of loyalty to Serene AST, including but not limited to the value of Kapadia's salary and benefits paid to him during the time of his ongoing breach of his fiduciary duties to Serene AST;

(c)  Punitive damages due to the willful and malicious nature of Kapadia's conduct;

(d)  Applicable interest and costs; and

(e)  Any other and further relief that the Court deems equitable and just.

<u>**COUNT VI**</u>
**Tortious Interference with Contract – Defendant Suavis**

119.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 118 as if fully set forth herein.

120.    Plaintiffs and Kapadia are parties to three valid and existing contracts, the Non-Competition Agreement, the Employment Agreement, and the Purchase Agreement, as set forth more fully above.

121.    By virtue of Kapadia's role at Suavis, Suavis had actual knowledge of the existence of the valid and enforceable contracts between Kapadia and Plaintiffs, as well as the obligations of confidentiality, non-competition, and non-solicitation contained therein prohibiting Kapadia from soliciting Plaintiffs' clients, employees, and from working in competition with Plaintiffs.

122.    Despite this knowledge, Suavis tortiously and unlawfully interfered and acted as a third-party intermeddler with the contracts between Plaintiffs and Kapadia by encouraging Kapadia to divert Plaintiffs' customers to Suavis, to recruit and poach Plaintiffs' employees to Suavis' employ, and to compete directly with Plaintiffs in violation of Kapadia's contractual obligations all while Kapadia was still employed by Serene AST.

123.    Moreover, Suavis tortiously and unlawfully interfered and acted as a third-party intermeddler with the contracts between Plaintiffs and Kapadia in employing Kapadia, permitting him to act in the role of Chief Executive Officer, Director, and other positions in the company all in violation of the non-compete and non-solicit requirements of Kapadia's contractual obligations.

124. Suavis' interference has caused and will continue to cause Plaintiffs damages in an amount to be determined at the trial of this cause.

125. Suavis acted willfully, maliciously, and with intentional disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined at trial.

126. Such interference caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully requests that this Court enter judgment in their favor and against Suavis and grant Plaintiffs the following relief:

(a) Restraining and enjoining Defendants and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, from destroying any and all records, documents or deleting any electronic communications in any way evidencing Kapadia's breach of his obligations of confidentiality, non-competition, non-solicitation and non-interference under Section 5 of Kapadia's Employment Agreement, Section 1.2 of Kapadia's Non-Competition Agreement, and applicable common law, including, but not limited to communications with Plaintiffs' customers or prospective customers; and Suavis' aiding, abetting or inducing such breaches;

(b) Restraining and enjoining Suavis from permitting Kapadia to own, financing, serve as an officer, director, or member of, or lending his name to Suavis Corporation in the Restricted Area as defined by the Non-Competition Agreement, pursuant to Section 2.1(a)-(b) of Kapadia's Non-Competition Agreement and applicable common law until further order of Court;

(c) Restraining and enjoining Suavis or any of its agents, employees, or any person or entity acting in concert with it from soliciting business in the Restricted Area as defined by Kapadia's Non-Competition Agreement, pursuant to Section 2.1(c) therein until further order of Court;

(d) Restraining and enjoining Suavis and those people and entities acting in concert with it from soliciting and/or poaching Plaintiffs' employees in violation of Section 2.1(d) of Kapadia's Non-Competition Agreement;

(e) Restraining and enjoining Suavis and those people and entities acting in concert with it from interfering with Plaintiffs' relationships with their business partners, including but not limited to Oracle, SugarCRM, Salesforce.com, Kronos, and any prospective customers referred to Plaintiffs by those business partners;

(f) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Defendant Suavis' tortious interference with contract;

(c) Compensatory damages for the actual losses incurred due to Suavis' tortious interference with contract;

(d) Punitive damages due to the willful and malicious nature of Suavis' conduct;

(e) Applicable interest and costs; and

(f) Any other and further relief that the Court deems equitable and just.

### <u>COUNT VII</u>
**Tortious Interference with Prospective Economic Advantage –Defendant Suavis**

127.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 126 as if fully set forth herein.

128.    Plaintiffs have a longstanding business relationship with their customers and a likely prospect to continue servicing those accounts; and AST agreed to the transaction, in large part, due to Serene Corporation's (now Serene AST's) longstanding business with its customers.

129.    Based on the longstanding business relationship Plaintiffs have with their customers, Plaintiffs have a reasonable expectation of future business to provide products and services in the information technology consulting practices set forth more fully above.

130.    By virtue of Kapadia's role at Suavis, Suavis had actual knowledge of Plaintiffs' longstanding business relationship with its customers.

131.    Suavis purposefully interfered with Plaintiffs' business expectancy and intentionally diverted its existing customers, as set forth more fully above, to do business with Suavis through the improper solicitation of those accounts by Kapadia and others.

132.    Through Kapadia, Suavis was able to nefariously and improperly solicit Plaintiffs' customers and intentionally divert business from Plaintiffs to Suavis, usurping future corporate opportunities of Plaintiffs.

133.    Suavis acted and continues to act willfully, maliciously, and with intentional disregard of Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined at trial.

134.    Such interference caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

WHEREFORE, Plaintiffs Applications Software Technology LLC and Serene AST, LLC respectfully requests that this Court enter judgment in their favor and against Suavis and grant Plaintiffs the following relief:

(a) Restraining and enjoining Suavis or any of its agents, employees, or any person or entity acting in concert with it from soliciting business in the Restricted Area as defined by Kapadia's Non-Competition Agreement, pursuant to Section 2.1(c) therein until further order of Court;

(b) Restraining and enjoining Kapadia and those people and entities acting in concert with him from interfering with Plaintiffs' relationships with their business partners, including but not limited to Oracle, SugarCRM, Salesforce.com, Kronos, and any prospective customers referred to Plaintiffs by those business partners;

(c) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Defendant Suavis' tortious interference with prospective economic advantage;

(d) Compensatory damages for the actual losses incurred due to Suavis' tortious interference with prospective economic advantage;

(e) Punitive damages due to the willful and malicious nature of Suavis' conduct;

(f) Applicable interest and costs; and

(g) Any other and further relief that the Court deems equitable and just.

**COUNT VIII**
**Conversion – All Defendants**

135.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

136.    Kapadia is under a duty to use Plaintiffs' company property only for Plaintiffs' benefit. Upon termination of his employment, Kapadia was affirmatively obligated to return all of Plaintiffs' company property to Plaintiffs. Plaintiffs demanded the return of all company property.

137. By reason of the conduct alleged above, including, but not limited to, Kapadia leaving the United States on or around January 11, 2018, in possession of Plaintiffs' company property, including, but not limited to, a laptop containing Plaintiffs' digital company property and information, building access keycard and office key, Kapadia has converted Plaintiffs' company property for his own benefit.

138. On information and belief, Kapadia has transferred or copied some or all of Plaintiffs' company property contained on the laptop to Suavis for its benefit. Accordingly, Suavis has also improperly converted Plaintiffs' company property for its own benefit.

139. Defendants acted with malice and willful disregard of their legal duty.

140. Defendants' conversion of Plaintiffs' company property has caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Defendants from further use of Plaintiffs' company property is necessary to provide Plaintiffs with complete relief.

WHEREFORE, Plaintiff Applications Software Technology LLC and Serene AST, LLC respectfully requests that this Court enter judgment in their favor and against Defendants and grant Plaintiffs the following relief:

(a) Restraining end enjoining Defendants and those people and entities acting in concert with him from possessing, disseminating, disclosing, copying, transmitting, using, secreting, or otherwise accessing or any of Plaintiffs' company property in their possession;

(b) Requiring Defendants and those people and entities acting in concert with them, including, but not limited to, all former employees of Plaintiffs working for Suavis, to

affirmatively return any company property or information deemed to be the confidential and proprietary property of Plaintiffs in their possession, custody, or control, including, but not limited to, the laptop and other company property of Plaintiffs; and

(c) Requiring Defendants to provide to Plaintiffs an account of Defendants' profits received by Defendants arising from Defendants' conversion of the company's property; and

(d) Any other and further relief that the Court deems equitable and just.

## COUNT IX
### Unjust Enrichment – Defendant Kapadia (In The Alternative)

141.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1-9, 13, 22-62, 64, 66-91, 110-118, 127-140 as if fully set forth herein.

142.    Kapadia voluntarily received millions of dollars in compensation in exchange for his representations and promises not to compete with Plaintiffs, not to solicit Plaintiffs' customers and employees, and to otherwise not undermine the goodwill and value of Serene AST, which AST purchased for substantial value.

143.    Kapadia has been unjustly enriched at the expense and detriment of Plaintiffs because he received the compensation referenced in Paragraph 133 without keeping his promises to Plaintiffs. The unjust, willful, and malicious actions taken by Kapadia in violation of his representations and promises to Plaintiffs, include, but are not limited to, Kapadia's incorporating Suavis, a competing company, acting as its Chief Executive Officer and sole director, among other positions since approximately June 2017, competing with Serene AST through Suavis, poaching Serene AST clients, poaching Serene AST employees, soliciting Serene AST clients and

prospective clients, and attempting to divert further business and revenue to Suavis from Serene AST.

144.    Kapadia is thus required to compensate Plaintiffs for the value of his ill-gotten gains in connection with the devaluation of the goodwill and economic value of Serene AST, his improperly obtained transaction related payouts, including, but not limited to, the payments received at or around the time of the closing of the transaction, the earn out cash received over time, and other compensation received by Kapadia from Plaintiffs, as it would otherwise be inequitable for Kapadia to retain them.

WHEREFORE, Plaintiff Applications Software Technology LLC and Serene AST, LLC respectfully requests that this Court enter judgment in their favor and against Kapadia and grant Plaintiffs the following relief:

(a) Compensatory damages for the actual losses incurred due to Kapadia's actions in an amount in excess of $8,000,000.00;

(b) Punitive damages due to the willful and malicious nature of Suavis' and Kapadia's conduct;

(c) Applicable interest and costs; and

(d) Any other and further relief that the Court deems equitable and just.

## **<u>JURY DEMAND</u>**

Plaintiffs Applications Software Technology LLC and Serene AST, LLC hereby demands trial by Jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b)(1).

Dated: January 31, 2018.

Respectfully submitted,

**APPLICATIONS SOFTWARE**
**TECHNOLOGY LLC AND SERENE**
**AST, LLC**

By:      /s/ David J. Stein

Nancy E. Sasamoto
David J. Stein
Jiwon J. Yhee
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
Tel:  (312) 245-7500
Fax:  (312) 245-7467
nsasamoto@masudafunai.com
dstein@masudafunai.com
jyhee@masudafunai.com
***Attorneys for Plaintiff***