IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| APPLICATIONS SOFTWARE TECHNOLOGY LLC, as successor by merger and conversion to APPLICATIONS SOFTWARE TECHNOLOGY CORPORATION, and SERENE AST, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PARESH KAPADIA and SUAVIS CORPORATION, <br> Defendants. | Case No. 2018-cv-00822 <br><br> Honorable Ronald A. Guzman <br><br> Magistrate Judge Daniel G. Martin |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO STAY THESE PROCEEDINGS PENDING ARBITRATION

Defendants Paresh Kapadia ("Kapadia") and Suavis Corporation ("Suavis") (together, "Defendants") hereby move to dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to compel arbitration of all disputes between the parties pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, or, in the alternative, to stay these proceedings pursuant to 9 U.S.C. § 3. In support of this Motion, Defendants state as follows:

## INTRODUCTION

Plaintiffs Applications Software Technology LLC ("AST") and Serene AST, LLC ("Serene AST") (together, "Plaintiffs") purport to bring this nine-count Complaint against Defendants based on alleged misconduct that occurred during the course of, and by virtue of, Kapadia's employment with Serene AST. All of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because Kapadia's Employment Agreement with Serene AST unambiguously requires the parties to resolve these disputes in binding arbitration proceedings.

## ALLEGATIONS OF THE COMPLAINT

AST is an Illinois-based Delaware limited liability company that provides information technology solutions to customers. (Dkt. #1 ("Compl.") at ¶ 1.) Pursuant to a purchase and sale agreement dated September 14, 2015, AST purchased Serene AST from VANP, Inc., a company in which Kapadia owns 46.7% interest. (*Id.* at ¶¶ 9-10.) Serene AST retained Kapadia as an employee following the transaction. (*Id.* at ¶ 13.)

Kapadia was required to execute an Employment Agreement as a condition of his employment with Serene AST. (*Id.* at ¶¶ 14, 21.) Pravin Kumar, Serene AST's Chief Executive Officer, executed the Employment Agreement on behalf of Serene AST. (*Id.* at ¶ 63; Dkt. #1-3 at pp. 14, 19.) The Employment Agreement was made effective September 14, 2015 and later amended on January 10, 2017. (Compl. at ¶ 63.)

The Employment Agreement required Kapadia to devote his entire business time to Serene AST, prohibited him from using "Confidential Information" other than "in connection with the performance of his duties hereunder," and prohibited him from removing any device from Serene AST's premises. (*Id.* at ¶ 15.) The Employment Agreement contained a Non-Competition and Non-Interference Section under which Kapadia agreed not to compete with Serene AST, solicit its customers, or solicit its employees. (*Id.* at ¶ 16.) The Employment Agreement also contained an arbitration clause which states, in relevant part:

> Except as provided in Section 7.1 above with respect to injunctive relief, ***any controversy or claim arising out of or relating to this Agreement, the breach hereof or Employee's employment by Company . . . shall be settled by binding arbitration*** held in Chicago, Illinois in accordance with the rules of the American Arbitration . . . . The award of the arbitrator shall be binding and final on all parties. The arbitrator shall have the same power and authority to order any remedy for violation of a contract, statute, ordinance, or regulation as a court would have . . . .

(Dkt. #1-3 at § 7.9 (emphasis added).)

Kapadia also executed a Non-Competition Agreement with AST on September 14, 2015. (*Id.* at ¶ 18.) The Non-Competition Agreement does not contain an arbitration clause. However, the "mutual promises and covenants contained in . . . the [Employment Agreement]" served as the parties' "consideration" for the Non-Competition Agreement. (Dkt. #1-1 at p. 2.) Pravin Kumar—this time in his role as President and Chief Executive Officer of AST—executed the Non-Competition Agreement on behalf of AST. (*Id.* at p. 8.)

Plaintiffs allege that Defendants failed to comply with the terms of the Employment Agreement. Specifically, Plaintiffs allege that Kapadia incorporated Suavis on June 13, 2017; that Kapadia acted as Chief Executive Officer, Chief Financial Officer, Secretary, and sole Director of Suavis; and that Kapadia and Suavis improperly solicited several of Serene AST's employees and customers. (Compl. at ¶¶ 37-51.) Plaintiffs further allege that Kapadia failed to return his company laptop following his termination from Serene AST, and that the laptop contains Plaintiffs' confidential and proprietary trade secret information. (*Id.* at ¶ 70.)

Plaintiffs' complaint purports to assert nine claims: violation of the Defend Trade Secrets Act (18 U.S.C. § 1836) against all Defendants (Count I); violation of the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.*) against all Defendants (Count II); breach of the Employment Agreement against Kapadia (Count III); breach of the Non-Competition Agreement against Kapadia (Count IV); breach of fiduciary duty against Kapadia (Count V); tortious interference with contract against Suavis (Count VI); tortious interference with prospective economic advantage against Suavis (Count VII); conversion against all Defendants (Count VIII); and, in the alternative, unjust enrichment against all Defendants (Count IX).

## **LEGAL STANDARD**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)

(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA operates to place arbitration agreements on the same footing as other contracts "to ensure that judiciaries enforce agreements to arbitrate." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 886 (N.D. Ill. 2014) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) and *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985)). Courts must uphold and enforce arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Under section 4 of the FAA, a federal district court may compel arbitration when there is (1) a written agreement to arbitrate; (2) a dispute covered by or within the scope of a valid arbitration agreement; and (3) a refusal to arbitrate. 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Once the court is satisfied that the parties agreed to arbitrate, it must promptly compel arbitration. 9 U.S.C. § 4; *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

If a valid arbitration agreement exists, the burden is on the party opposing arbitration to show that the claims at issue are not covered in the arbitration agreement. *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. A party's request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Paragon*, 22 F. Supp. 3d at 887 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).

There is a growing trend among federal courts favoring dismissal of a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the claims asserted are subject to arbitration. *See, e.g.*, *Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*, 680 F.3d 118, 126 (1st Cir. 2012); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011); *Johnson v. Orkin*, 928 F. Supp. 2d 989, 998-99 (N.D. Ill. 2013) (collecting cases); *Bryant v. Fulgham*, No. 12 C 823, 2012 WL 1802150, at *3 (N.D. Ill. May 17, 2012) (finding dismissal appropriate because all claims were subject to arbitration, leaving nothing for the court to decide unless the parties sought confirmation of or challenges to the arbitrator's award). The Seventh Circuit has affirmed such dismissals by the district courts. *See, e.g.*, *Baumann v. Finish Line, Inc.*, 421 F. App'x 682, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002).

## **ARGUMENT**

The Court should dismiss all of Plaintiffs' claims and compel arbitration because: (1) there is a written agreement to arbitrate; (2) all of Plaintiffs' claims are within the scope of the arbitration agreement; and (3) Plaintiffs have refused to arbitrate.

**1.  A written agreement to arbitrate exists between the parties.**

The Employment Agreement expressly mandates that, except with respect to injunctive relief, *all* claims "arising out of or relating to" the Employment Agreement *or* Kapadia's employment with Serene AST must be "settled by binding arbitration held in . . . accordance with the rules of the American Arbitration Association." (Dkt. #1-3 at § 7.9.) Both Kapadia and Serene AST executed the Employment Agreement (twice). (*Id.* at pp. 14, 15, 19.) The Employment Agreement, with its mandatory arbitration provision, has governed the parties' relationship at all

5

times relevant to this dispute. Plaintiffs do not and cannot dispute the validity of the arbitration provision. In short, a valid written arbitration agreement exists between Serene AST and Kapadia.

The arbitration provision also binds co-plaintiff AST and co-defendant Suavis even though they are not signatories to the Employment Agreement. "[T]here are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co.*, 417 F.3d at 687 (citing *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002)).

With regard to AST, a non-signatory plaintiff "is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006) (quoting *Zurich Am. Ins. Co.*, 417 F.3d at 688)). "This estoppel doctrine exists to prevent a litigant from unfairly receiving the benefit of a contract while at the same time repudiating what it believes to be a disadvantage in the contract, namely the contractual arbitration provision." *Id.*; *see also Hughes Masonry Co., Inc. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.") (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)).

Here, there is no question that AST's claims "are fundamentally rooted in the rights and terms of the [Employment Agreement]," thus requiring AST to arbitrate its claims. *Gersten*, 442 F. Supp. 2d at 578. Plaintiffs expressly allege that AST is a party to the Employment Agreement. (Compl. at ¶ 120.) The terms and conditions of the Employment Agreement served as the parties' "consideration" for the Non-Competition Agreement. (Dkt. #1-1 at p. 2.) In Count II of Plaintiffs'

Complaint, Plaintiffs expressly purport to bring a claim jointly against Kapadia for breach of the Employment Agreement. (Compl. at ¶¶ 92-100.) Plaintiffs also incorporate by reference their breach of Employment Agreement claim against Kapadia, and the factual allegations upon which the claim is based, in all of their other claims (except for the alternative claim of unjust enrichment, which must assume that no contract exists). (*Id.* at ¶¶ 76, 84, 101, 110, 119, 127, 135.) And Plaintiffs expressly rely on the terms of the Employment Agreement, or Kapadia's employment with Serene AST, as bases for their allegations and requested relief in every single one of their claims. (*See, e.g., id.* at ¶¶ 20 (alleging that the Non-Competition Agreement imposed certain restrictions on Kapadia "as defined by the restrictive covenant in the Employment Agreement"); 79-83; 87-100; 109(e), (f), (i), and (j); 111-114; 120-126; 128-132; 135-138; and 143-144.) Having sought the Employment Agreement's direct benefits in every single one of their claims, Plaintiffs—including AST—cannot now attempt to skirt their obligation to arbitrate those claims simply because AST did not sign the Employment Agreement.[1]

With regard to Suavis, under the doctrine of equitable estoppel, a non-signatory defendant may compel arbitration "in two distinct circumstances: when the signatory references to or presumes the existence of a written agreement in asserting its claims against the non-signatory, and when the signatory raises allegations of 'substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.'" *Paragon*, 22 F. Supp. 3d at 889-890 (quoting *Hoffman v. Deloitte & Touche*, LLP, 143 F. Supp.

---

[1] Though AST itself is not a signatory to the Employment Agreement, it is worth noting that the same person—Pravin Kumar, in his role as Chief Executive Officer—signed both the Employment Agreement and the Non-Competition Agreement on behalf of Serene AST and AST, respectively. There can thus be no claim that AST was not aware of the terms of the Employment Agreement, including its mandatory arbitration provision.

2d 995, 1004-1005 (N.D. Ill. 2001)); *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 882 (N.D. Ill. 2006) (same).

Both circumstances apply here. Plaintiffs rely on or expressly reference the terms of the Employment Agreement in every single one of their claims. *See, e.g.*, *Hoffman*, 143 F. Supp. 2d at 1004-05 (plaintiffs estopped from denying arbitration where their claims "make reference to and presume the existence of the written agreements"). And the "sum and substance" of Plaintiffs' Complaint is that Suavis and Kapadia—as Chief Executive Officer, Chief Financial Officer, Secretary, and sole Director of Suavis—together conspired to solicit Plaintiffs' customers and employees and misuse Plaintiffs' trade secrets. *See id.* at 1004. "The claims thus raise allegations of substantially interdependent and concerted misconduct" by both the signatory (Kapadia) and the non-signatory (Suavis). *Id*. at 1005. "Therefore, [P]laintiffs are equitably estopped from avoiding arbitration." *Id.*

**2.      All of Plaintiffs' claims are within the scope of the arbitration agreement.**

All of Plaintiffs' claims are within the scope of the arbitration agreement. The arbitration provision covers "*any* controversy or claim arising out of or relating to" the Employment Agreement *or* Kapadia's employment by Serene AST. (Dkt. #1-3 at § 7.9 (emphasis added).) "[T]he Seventh Circuit has repeatedly held that the language 'arising out of' and 'relating to' is extremely broad and creates a 'presumption of arbitrability' that 'reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se.'" *Paragon*, 22 F. Supp. 3d at 891 (quoting *Gore v. Alltel Commcn's, LLC*, 666 F.3d 1027, 1033-34 (7th Cir. 2012)); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (the language "arising out of or relating to" is "extremely broad and capable of an expansive reach," creating a "presumption of arbitrability").

"The plaintiff bears the heavy burden of rebutting the presumptive arbitrability of its claims, and the Court shall not deny arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *United Steelworkers*, 363 U.S. at 582-83). "[A]ny doubts concerning the scope of arbitration must be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone*, 460 U.S. at 24-25).

As set forth above, Plaintiffs rely on or expressly reference the terms of the Employment Agreement in all of their claims. For example, Plaintiffs expressly purport to bring a claim jointly against Kapadia for breach of the Employment Agreement. (Compl. at ¶¶ 92-101.) Plaintiffs also expressly rely on the terms of the Employment Agreement in their claim for breach of the Non-Competition Agreement. (*See, e.g., id.* at ¶¶ 20 (alleging that the Non-Competition Agreement imposed certain restrictions on Kapadia "as defined by the restrictive covenant in the Employment Agreement"); 109(e), (f), (i), and (j).)

Plaintiffs' statutory trade secrets claims also have their "origin or genesis" in the contract. For example, Plaintiffs allege that Kapadia had access to Plaintiffs' alleged trade secrets by virtue of his employment with Serene AST, and that "Plaintiffs required Kapadia to enter into the Employment Agreement and the Non-Competition Agreement because, among other things, they are in the business of providing information technology solutions which are not publicly available for purchase." (*Id.* at ¶¶ 3, 21, 26.)

Plaintiffs' other claims also have their "origin or genesis" in the contract:

- Plaintiffs' breach of fiduciary duty claim is expressly premised on the allegations that "Kapadia was an employee and agent of Serene AST pursuant to his Employment Agreement" and that, "[a]s an employee and agent of Serene AST, Kapadia owed Serene AST a fiduciary duty of loyalty." (*Id.* at ¶¶ 111-12.)

- Plaintiffs' tortious interference with contract claim directly implicates the Employment Agreement, alleging that "Plaintiffs and Kapadia are parties to . . . the Employment Agreement" and that Suavis "acted as a third-party intermeddler with the contracts between Plaintiffs and Kapadia." (*Id.* at ¶¶ 120, 122.)

- Plaintiffs' tortious interference with prospective economic advantage directly stems from Kapadia's employment with Serene AST: Plaintiffs allege that Suavis had knowledge of Plaintiffs' business relationships with its customers "by virtue of Kapadia's role at Suavis" and that Suavis improperly solicited Plaintiffs' customers "[t]hrough Kapadia." (*Id.* at ¶¶ 130-132.)

- Plaintiffs' conversion claim centers around their allegations that the Employment Agreement prohibited employees from removing Serene AST's "Proprietary Items" and "exclusive property" from the company's premises, that Kapadia "was affirmatively obligated" to return Plaintiffs' company property to Plaintiffs "[u]pon termination of his employment," and that Kapadia did not comply with these directives. (*Id.* at ¶¶ 15, 136-140.)

- Plaintiffs' unjust enrichment claim depends on Kapadia's employment with Serene AST, alleging that Kapadia must return all the compensation he received as a Serene AST employee. (*See id.* at ¶¶ 142-144.)

In short, Plaintiffs' "entire case hinge[s] on [their] asserted rights under the . . . contract," and their claims all have their "origin or genesis" in the contract. *Gersten*, 442 F. Supp. 2d at 581 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)); *Paragon*, 22 F. Supp. 3d at 892 (internal citations omitted). Accordingly, there can be no question that all of Plaintiffs' claims, including their statutory claims, "arise out of or relate to" the Employment Agreement or Kapadia's employment with Serene AST, and thus that the claims fall within the scope of the broad arbitration provision. *See Paragon*, 22 F. Supp. 3d at 892 (quoting *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) ("This duty to enforce the arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."); Dkt. #1-3 at § 7.9 (requiring all claims to be arbitrated, whether based on contract, statute, ordinance, or regulation).

3. **Plaintiff have refused to arbitrate.**

Counsel for Defendants conferred with counsel for Plaintiffs early in this litigation regarding Defendants' intent to move to arbitrate these claims. Plaintiffs' counsel did not agree to arbitration at that time. On April 16, 2018, Defendants' counsel again conferred with Plaintiffs'

10

counsel regarding Defendants' motion to compel arbitration. Plaintiffs confirmed that they would not agree to arbitrate Plaintiffs' claims. Accordingly, this Court may compel arbitration of all claims pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

### CONCLUSION

For all the reasons discussed above, Defendants Paresh Kapadia and Suavis Corporation respectfully request that this Court enter an order compelling Plaintiffs to arbitrate their claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and dismiss Plaintiffs' Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, stay these proceedings pursuant to 9 U.S.C. § 3; and order such other and further relief as this Court deems just and fair.

Dated: April 17, 2018

Respectfully Submitted,

**PARESH KAPADIA** and **SUAVIS CORPORATION**

By: /s/ Mark H. Horwitch

One of Their Attorneys

Mark H. Horwitch
Katherine O'Brien
Jacob B. Berger
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
mhorwitch@tdrlawfirm.com
kobrien@tdrlawfirm.com
jberger@tdrlawfirm.com