IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| APPLICATIONS SOFTWARE TECHNOLOGY LLC, as successor by merger and conversion to APPLICATIONS SOFTWARE TECHNOLOGY CORPORATION, and SERENE AST, LLC, | ) ) ) ) ) ) | Case No. 2018-cv-00822 |
| Plaintiffs, | ) ) | Honorable Ronald A. Guzman |
| v. | ) ) | Magistrate Judge Daniel G. Martin |
| PARESH KAPADIA and SUAVIS CORPORATION, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

NOW COME Plaintiffs Applications Software Technology LLC ("AST") and Serene AST, LLC ("Serene AST" and collectively with AST, "Plaintiffs"), by and through their attorneys, Gary Vist, Nancy E. Sasamoto, David J. Stein, and Jiwon J. Yhee of Masuda, Funai, Eifert & Mitchell, Ltd., and, in response to Defendants' Motion to Compel Arbitration and Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Stay These Proceedings Pending Arbitration ("Motion to Compel Arbitration" or "Motion"), state as follows:

**I.      INTRODUCTION**

The Court should enter an Order denying Defendants' Motion to Compel Arbitration because Defendant Paresh Kapadia ("Kapadia") agreed to litigate all of the claims in this case in the state or federal courts located in Chicago, Illinois. Contrary to Defendants' allegations in their Motion, AST and Serene AST's claims against Defendants are not only based on Kapadia's misconduct as an employee of Serene AST, but, more broadly, on Kapadia's violation of his obligations in connection with the sale and purchase of Serene AST. Multiple agreements,

1

including, but not limited to, the Purchase Agreement governing the sale of Serene AST, Kapadia's Non-Competition Agreement, and Kapadia's Employment Agreement, govern the relationship of the parties, and these agreements, read together, undeniably indicate that this Court, not an arbitral forum, is the proper venue to adjudicate the claims in this case. The Court should therefore retain all of the claims directed to Kapadia, and, since Defendant Suavis Corporation's ("Suavis") ability to compel arbitration is dependent on Kapadia's ability to do so, all claims with respect to Suavis as well.

Alternatively, if the Court finds that the arbitration provision in the Employment Agreement is enforceable all other evidence notwithstanding, the Court should only compel the arbitration of claims to the extent that they are directed solely to Kapadia and to the extent that these claims only arise from, or relate to, the Employment Agreement and breaches thereof. Based on Seventh Circuit case law, the scope of the arbitration clause in the Employment Agreement is limited to Kapadia's employment only, and it cannot compel the arbitration of claims rooted in other independent agreements, such as the Non-Competition Agreement and the Purchase Agreement. The Employment Agreement supports this interpretation of the scope of its arbitration clause, as it states that its restrictive covenants are "separate and independent" of those contained in the Non-Competition Agreement, and that the restrictive covenants in these agreements "[sic] can be and shall be *separately* enforced." Regardless of the scope of the arbitration clause, however, Suavis cannot compel arbitration of any of the claims brought against it, as Suavis is a non-signatory to the Employment Agreement, and Suavis has failed to satisfy the requirements for equitable estoppel under Illinois law.

## II. **FACTUAL ALLEGATIONS**

Pursuant to a purchase agreement dated September 14, 2015 ("Purchase Agreement"), AST purchased all of the equity securities of Serene AST from VANP, Inc., the sole member of Serene AST and of which Kapadia owned 46.7%, and AST obtained ownership of all of the equity securities, intellectual property assets, and other various assets of Serene AST subject to the terms and conditions outlined in the Purchase Agreement. (Complaint, Doc. 1 at ¶¶ 9-10, Purchase Agreement, Exhibit 2.) As part of that purchase transaction, Serene AST retained Kapadia as an employee of Serene AST. (*Id*. at ¶ 13.) Kapadia executed an employment agreement with Serene AST, which was made effective as of September 14, 2015 and later amended on January 10, 2017 ("Employment Agreement"). (*Id*. at ¶ 14, Employment Agreement, Exhibit 3.) The Employment Agreement, among other things, prohibited Kapadia from (a) disclosing or using any "confidential information," which includes trade secrets and information concerning the business and affairs of AST, other than in connection with his duties under the Employment Agreement; (b) removing any document, device, computer software, or code from Serene AST's premises; (c) owning, financing, or serving as an officer or director of, or lending his name to any business in competition with Serene AST as described in the Employment Agreement; (d) being employed by any company in business in competition with Serene AST as described in the Employment Agreement; and (e) soliciting Serene AST's customers or employees as described in the Employment Agreement. (*Id*. at ¶¶ 15-16, Exhibit 3, Section 6.) The Employment Agreement also contained an arbitration clause, which states that:

> Arbitration. Except as provided in Section 7.1 above with respect to injunctive relief, any controversy or claim arising out of or relating to this [Employment] Agreement, the breach hereof, or Employee's employment by [Serene AST]…shall be settled by binding arbitration held in Chicago, Illinois…

In addition to the Employment Agreement, Kapadia also executed a separate Non-Competition Agreement with AST on September 14, 2015. (*Id*. at ¶ 18, Exhibit 1.) The purpose of

3

the Non-Competition Agreement was, among other things, to secure more fully the benefits of the acquisition of Serene AST and to protect and preserve the business and goodwill associated with the business of Serene AST. (*Id.* at ¶ 19, Non-Competition Agreement, Exhibit 1.) The Non-Competition Agreement contained non-competition and non-interference provisions, among other restrictive covenants, that are similar to those in the Employment Agreement. (*Id.* at Exhibit 1, Section 2.) The Non-Competition Agreement also contained a "Governing Law and Jurisdiction" provision that stated, in relevant part, that:

> The state and federal courts within Chicago, Illinois, have exclusive jurisdiction over any controversy or claim arising out of or related to this [Non-Competition] Agreement, including any questions regarding its existence, validity, termination or breach, as well as any non-contractual claims arising out of the parties' relationship…

The Employment Agreement explicitly stated that it "shall not supersede the Non-Competition Agreement" and that Kapadia agreed that "the restrictive covenants contained [in the Non-Competition Agreement] are *separate and independent covenants* and…shall be construed as such and it is the intent of the parties that the same [sic] can be and shall be separately enforced." (*Id.* at Exhibit 1, Section 7.8.)

Kapadia also executed the Purchase Agreement in his individual capacity as a stockholder. (*Id.* at ¶ 11, Exhibit 2.) The Purchase Agreement explicitly referenced the Employment Agreement and the Non-Competition Agreement, and stated that the execution and the delivery of these agreements were conditions to AST's purchase of Serene AST. (*Id.* at Exhibit 2, Section 2.02.) The Purchase Agreement contained a "Consent to Jurisdiction and Service of Process" provision that provided, in relevant part, that:

> The parties to this Agreement submit to the exclusive jurisdiction of the state courts located in Chicago, Illinois or the courts of the United States located in Chicago, Illinois in respect of the interpretation and enforcement of the provisions of this

[Purchase] Agreement and any related agreement, certificate or any other document delivered in connection herewith…

The Purchase Agreement also included Section 11.17, which governs any conflicts between it and any other transaction documents:

> 11.17 <u>Conflict Between Transaction Documents</u>. The parties agree and acknowledge that to the extent any terms and provisions of this [Purchase] Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other agreement, document, or instrument contemplated hereby, this Agreement will govern and control.

The Purchase Agreement, Employment Agreement, and the Non-Competition Agreement all have choice-of-law provisions indicating that they will be governed by and construed under the laws of the State of Illinois without regard to conflicts of law principles. (*Id*. at Exhibit 1-3.)

On or about December 22, 2018, Plaintiffs became aware of Kapadia's nefarious conduct. (*Id*. at ¶ 34.) Kapadia's misconduct, which included, but was not limited to, incorporating Suavis, a competing company, acting as Suavis' Chief Executive Officer and sole director, soliciting Plaintiffs' current and prospective clients, poaching Plaintiffs' clients, interfering with Plaintiffs' relationships with their business partners, soliciting and raiding Serene AST's employees, converting Plaintiffs' company property, and misappropriating Plaintiffs' proprietary, confidential, and trade secret information, was related not only to Kapadia's employment with Serene AST, but to AST's purchase of Serene AST and Kapadia's representations and promises in connection with the same, including the covenants contained the Non-Competition Agreement. (*See generally*, Complaint.)

On or about January 31, 2018, Plaintiffs filed a complaint in this Court, alleging the following nine claims against Kapadia and/or Suavis: (1) Count I: Federal Defend Trade Secrets Act (all Defendants); (2) Count II: Illinois Trade Secrets Act (all Defendants); (3) Count III: Breach of the Employment Agreement (Kapadia); (4) Count IV: Breach of the Non-Competition

5

Agreement (Kapadia); (5) Count V: Duty of Loyalty (Kapadia); (6) Count VI: Tortious Interference with Contract (Suavis); (7) Count VII: Tortious Interference with Prospective Economic Advantage (Suavis); (8) Count VIII: Conversion (all Defendants); (9) Unjust Enrichment (Kapadia). Plaintiffs' claims against Kapadia and Suavis are related, not only to the Employment Agreement, but also to the Non-Competition Agreement and the Purchase Agreement. (*See generally*, *id*.)

### III. ARGUMENT

#### A. Standard of Review

The Federal Arbitration Act ("FAA") governs the application and interpretation of arbitration clauses in commercial contracts for both state and federal courts. *Thomas v. Am. Gen. Fin. Inc.*, No. 08 C 3009, 2009 U.S. Dist. LEXIS 22932, at *3 (N.D. Ill. Mar. 23, 2009) (citing *Jain v. Mere*, 51 F.3d 686, 688 (7th Cir. 1995)); *see* Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. Despite strong federal public policy in favor of arbitration, courts ultimately interpret arbitration agreements based on the intent of the parties. *Id.* (citing *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003)); *see AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("As with any contract, the touchstone for interpreting an arbitration clause must be the intent of the parties.") A court cannot force a party to arbitrate a claim it has not previously agreed to arbitrate. *See Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Nor may a court expand the application of an arbitration clause beyond its intended scope. *Thomas*, 2009 U.S. Dist. LEXIS 22932, at *4 (citing *United Logistics*, 319 F.3d at 929; *AGCO*, 216 F.3d at 593.); *Pivoris v. TCF Fin. Corp.*, No. 07 C 2673, 2007 U.S. Dist. LEXIS 90562, at *9-10 (N.D. Ill. Dec. 7, 2007). Thus, when presented with a question of arbitrability, "the court will defer to the parties' intent to determine: (1) whether a valid arbitration agreement exists; and (2) whether

the scope of the parties' dispute falls within that agreement." *Thomas*, 2009 U.S. Dist. LEXIS 22932, at *4-5 (internal citation omitted); *see Pivoris*, 2007 U.S. Dist. LEXIS 90562, at *9. In determining the validity, the scope, and who may invoke or be bound by an arbitration agreement, a court must apply the traditional principles of state contract law. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *Scheurer*, 863 F.3d at 752.

### B. No Valid Agreement to Arbitrate Exists Between the Parties.

The Court should deny Defendants' Motion to Compel Arbitration in its entirety because there is no valid agreement to arbitrate between the parties. Contrary to Defendants' allegations in their Motion to Compel, there are three agreements that are relevant to the current case and that constitute the basis for Plaintiffs' claims—the Purchase Agreement, the Non-Competition Agreement, and the Employment Agreement (collectively, "Agreements"). Kapadia is a signatory to all three Agreements. In determining whether a valid arbitration agreement exists between the parties, the Court should examine these Agreements together as a whole. *See, e.g., Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663 (7th Cir. 2002) ("At the outset of our inquiry, we think it is important to examine the [] contracts as a whole and to determine their relationship to each other…").

An examination of these Agreements together demonstrates that the Purchase Agreement and the Non-Competition Agreement are in direct conflict with the Employment Agreement regarding the proper venue for the resolution of disputes relating to or arising out of the Employment Agreement or Kapadia's employment with Serene AST ("Employment Agreement Claims"). The Purchase Agreement contains a forum selection clause which provides that the parties submit to "the *exclusive jurisdiction* of the state courts located in Chicago, Illinois or the courts of the United States located in Chicago, Illinois in respect of the interpretation and

7

enforcement of the provisions of this Agreement *and any related agreement…or other document delivered in connection herewith*…" (Compl. at Exhibit 2, Section 11.14.) The Non-Competition Agreement, consistent with the Purchase Agreement, states that "…the state and federal courts within Chicago, Illinois, have *exclusive* jurisdiction over any controversy or claim arising out of or related to the [Non-Competition]." (Compl. at Exhibit 1, Section 5.7.) The forum selection clauses in the Purchase Agreement and the Non-Competition Agreement are mandatory and fix the exclusive venue for these disputes in the state and federal courts located in Chicago, Illinois. *See Prof'l Led Lighting, Ltd. v. Aadyn Tech, LLC*, No. 14-cv-2440, 2014 U.S. Dist. LEXIS 163856, *16-17 (N.D. Ill. Nov. 21, 2014) ("The use of 'exclusive jurisdiction' in a particular forum shows that the parties intended to also make venue exclusive…the use of…'exclusive jurisdiction' [is] indicative of a mandatory forum selection clause."); *Piechur v. Redbox Automated Retail, LLC*, Case No. 09-cv-984-JPG, 2020 U.S. Dist. LEXIS 16324, at *4, 8-9 (N.D. Ill. Feb. 24, 2010) ("By agreeing to submit to the 'exclusive jurisdiction' in a particular forum the parties…have manifested their intent to make that venue exclusive and to exclude venue in all other jurisdictions."); *see also Newell Co. v. Lee*, 950 F. Supp. 864, 868-69 (N.D. Ill. 1997) (finding that the defendant had consented to exclusive venue in the state and federal courts in Chicago, Illinois where the defendant consented to the "exclusive jurisdiction" of such courts). These forum selection clauses conflict on their face with the arbitration clause in the Employment Agreement.

In such a circumstance, the Purchase Agreement provides instruction on how to resolve any conflicts between it and any related agreement delivered in connection with the Purchase Agreement, including, but not limited to, the Employment Agreement. Pursuant to Section 11.17 of the Purchase Agreement, "to the extent that any terms and provisions of this [Purchase] Agreement are in any way inconsistent with or in conflict with any term, condition or provision of

*any other agreement, document, or instrument contemplated hereby*, the Agreement will govern and control." Such conflicts provisions are fully enforceable, and the Seventh Circuit has given effect to these provisions. *See, e.g. UMW v. Brushy Creek Coal Co.* 505 F.3d 764, 767 (7th Cir. 2007) (giving effect to conflicts clause that stated that, in the event of inconsistency between two documents, one should prevail over the other); *Bradford-Scott Data Corp. v. Physician Computer Network*, 136 F.3d 1156, 1157-58 (7th Cir. 1998) (enforcing conflicts provision that stated that, in the event of any inconsistency or conflict between two agreements, one agreement should prevail over the other). One of the agreements contemplated by, and explicitly mentioned in, the Purchase Agreement is the Employment Agreement, the execution and delivery of which is identified by the Purchase Agreement as a condition of AST's purchase of Serene AST. (Compl. at Exhibit 2, Section 2.02.) Accordingly, because the Employment Agreement is an agreement contemplated by the Purchase Agreement and the parties, including Kapadia, agreed that the Purchase Agreement should prevail over any conflicts with the Employment Agreement, the Purchase Agreement's forum selection clause controls and governs the Employment Agreement Claims, and other claims, in the current case. In other words, there is no valid agreement to arbitrate and the entirety of this case should proceed in this Court.

**C. The Scope of the Employment Agreement's Arbitration Clause Is Limited.**

In the alternative, even if the arbitration clause in the Employment Agreement was enforceable, which it is not, many of Plaintiffs' claims do not fall within the scope of the arbitration clause. In cases where the parties enter into multiple agreements, but only one agreement contains an arbitration clause, the parties can only be compelled to arbitrate only if (1) the arbitration clause itself is broad enough to encompass their dispute, or (2) the agreement containing the arbitration clause incorporates the others by reference. *Shriner v. Signal Fin. Co.*, 92 Fed. Appx. 322, 325-26

(7th Cir. 2003); *Rosenblum*, 299 F.3d at 662. Here, the Purchase and Non-Competition Agreements do not incorporate the Employment Agreement by reference. Accordingly, Defendants must show that the arbitration clause in the Employment Agreement is broad enough to encompass Plaintiffs' claims in the case at bar in order to compel arbitration of these claims.

An arbitration agreement is limited to its subject matter. *Thomas*, 2009 U.S. Dist. LEXIS 22932, at *7-8; *Rosenblum*, 299 F.3d 657 (holding that the arbitration clause in the employment contract between the parties was limited to disputes relating to the employment agreement and not to a separate acquisition agreement). The subject matter of an arbitration provision "carries its own substantive and temporal terms and limitations." *Bradford*, 136 F.3d at 1157. An arbitration agreement does not encompass claims arising out of or relating to another agreement simply because both of these agreements are necessary components of a comprehensive business transaction. *See Shriner*, 92 Fed. Appx. At 323-28; *Rosenblum*, 299 F.3d at 663-64.

In *Rosenblum*, case factually similar to the current case, the defendant sought to compel arbitration of the plaintiff's claims pursuant to an arbitration clause in the plaintiff's employment agreement. *See Rosenblum*, 299 F.3d at 662 (applying Illinois law). The employment agreement was a condition precedent to a larger acquisition agreement executed between the defendant and the plaintiff, whereby the plaintiff sold his business, Muffin Communications, Ltd., to the defendant. *Id.* at 660. Under the terms of the acquisition agreement, the plaintiff agreed to work for the defendant as a Senior Vice-President of Muffin. *Id.* The employment agreement contained a broad arbitration clause that stated that "…a matter in dispute under or relating to this Agreement shall…be finally resolved by binding arbitration." *Id*. The acquisition agreement did not contain an arbitration clause. *Id*. Both the employment and the acquisition agreement included noncompete agreements, which prevented the plaintiff from competing with the defendant for two years after

the cessation of the plaintiff's employment with the defendant. *Id*. The *Rosenblum* Court, noting that the acquisition agreement and the employment agreement were separate, free-standing contracts dealing with distinct subject matter, i.e. one dealt with the plaintiff's sale of the business to the defendant, while the other had to do with the employment of the plaintiff, held that "there is no indication that the parties intended that the terms of the [e]mployment [a]greement apply to the disputes arising under the [a]cquisition [a]greement" and interpreted the arbitration clause as applying *only* to the plaintiff's employment relationship with defendant, *not* any acquisition agreement issues. *Id.* at 663-64. In determining that the employment agreement and the acquisition agreement were distinct, independent agreements, the *Rosenblum* Court found convincing the fact that both agreements contained noncompete provisions that were substantially similar to each other; if the agreements were not separate contracts, the Court reasoned, then one of the non-compete provisions would be wholly superfluous. *Id*. at 663.

Here, like in *Rosenblum*, there are multiple agreements between the parties that are necessary components of a comprehensive business transaction, i.e. the sale of Serene AST to AST. Each of these agreements is a separate, free-standing contract dealing with a distinct subject matter: the Purchase Agreement deals with the sale of Serene AST to AST; the Non-Competition Agreement secures the benefits of the acquisition of Serene AST and protects and preserves the business and goodwill associated with Serene AST's business; and the Employment Agreement governs the employment relationship between Serene AST and Kapadia. The separate nature of these Agreements is further buttressed by the fact that non-competition provisions and other restrictive covenants that are substantially similar are located in both the Employment Agreement and the Non-Competition Agreement—if these agreements were not distinct from each other, there would be no reason to put the same restrictive covenants in both documents, and render one set of

restrictive covenants superfluous. Moreover, the Employment Agreement explicitly states that "the restrictive covenants contained [in the Non-Competition Agreement] are *separate and independent covenants*" from those in the Employment Agreement. (Compl. at Exhibit 1, Section 7.8.) Finally, reviewing the Employment Agreement's arbitration clause, which is similar to the arbitration clause in *Rosenblum*, the language is explicit that it only governs claims arising from, or relating to, the Employment Agreement, breaches of the same, and Kapadia's employment with Serene AST.

Accordingly, applying *Rosenblum* to the present case, Plaintiffs cannot be compelled to arbitrate any claims that are related to, or arise from, the Purchase Agreement or the Non-Competition Agreement because there is no indication that the parties intended for the Employment Agreement's arbitration clause to apply to those claims. As previously stated above, Plaintiffs' claims against Kapadia include claims related to, and arising out of, Kapadia's misconduct in connection with the sale and purchase of Serene AST, specifically counts I, II, IV, VI, VII, and IX. Of these claims, count IV (Breach of Non-Competition Agreement) and IX (Unjust Enrichment) are *solely* based on Kapadia's violations of his promises to preserve the good will and business of Serene AST, which was sold to AST pursuant to the Purchase Agreement, and these claims are completely independent and separate from claims arising from the Employment Agreement. Thus, even if the Court finds that the arbitration clause in the Employment Agreement is enforceable, the Court should retain *at least* counts IV and IX.

**D. Suavis Cannot Compel Arbitration of Plaintiffs' Claims Against It.**

Regardless of the scope of the arbitration clause, Suavis cannot compel the arbitration of any claims brought against it under the equitable estoppel theory because, when Serene AST entered into the Employment Agreement with Kapadia, neither AST nor Serene AST took any

action on which Suavis could have reasonably relied to its detriment that Plaintiffs would arbitrate any claims they had against Suavis. According to the U.S. Supreme Court, state law governs whether a contract, including an arbitration agreement, is enforceable by or against a non-party. *Scheurer*, 863 F.3d at 752 (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Here, Illinois law governs, since the Purchase Agreement, Non-Competition Agreement and the Employment Agreement all contain choice-of-law provisions indicating Illinois law.

Defendants allege that Suavis may compel arbitration under the equitable estoppel theory because Plaintiffs reference the Employment Agreement in asserting their claims against Suavis, and Plaintiffs allegedly raise allegations of "substantially interdependent and concerted misconduct" between Suavis and Kapadia. (Motion to Compel, Doc. 46, at pp. 7-8.) Defendants are wrong. Illinois courts have expressly rejected this "expanded interpretation" of equitable estoppel as inconsistent with the basic principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 515-16 (5th Dist. 2004) (internal citations omitted); *Peach v. CIM Ins. Corp.*, 352 Ill. App. 2d 691, 697 (5th Dist. 2004); *see Warciak v. Subway, Rests., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (applying Illinois law). Instead, under Illinois law, in order to compel arbitration, a non-signatory must show that the signatory " by his or her statements or conduct, induce[d] [the non-signatory] to rely, to his or her detriment, on the statements and conduct of the [signatory]. The party asserting a claim of estoppel must have relied on the acts or representations of the other and have had no knowledge or convenient means of knowing the facts and such a reliance must have been reasonable." *Peach*, 352 Ill. App. 3d at 698; *Ervin*, 349 Ill. App. 3d at 514-15; *see Warciak*, 880 F.3d at 872. In *Warciak*, the Court, applying Illinois law, refused to allow a non-signatory to compel arbitration under the equitable estoppel theory where the non-signatory could not show

13

that it detrimentally relied on the plaintiff's actions. *See Warciak*, 880 F.3d at 872; *see also Peach*, 352 Ill. App. 3d at 678 (not allowing non-signatory to compel arbitration under equitable estoppel where the plaintiff took no action when she entered into the agreement from which the defendant could have reasonably relied, to its detriment, that the plaintiff would arbitrate her claims against the defendant); *Ervin*, 349 Ill. App. 3d at 515 (same).

Here, Suavis has not satisfied any of the requirements for equitable estoppel. When Serene AST entered into the Employment Agreement with Kapadia, Serene AST and AST did not take any action that would lead Suavis to rely, to its detriment, upon a belief that Serene AST or AST would arbitrate its claims against Suavis. In fact, Suavis could not have detrimentally relied on any action or statement by Plaintiffs because, at the time Serene AST executed the Employment with Kapadia, Suavis was not yet incorporated and did not even exist. Accordingly, Suavis cannot compel Serene AST or AST to arbitrate their claims against Suavis.

**E. If the Court Compels Arbitration of All Claims, the Court Should Stay This Case.**

In the event that this Court, despite the arguments set forth above, compels arbitration of all of Plaintiffs' claims, the Court should stay, not dismiss, this case pending the completion of arbitration proceedings. The FAA states that the Court "shall on application of one of the parties stay the trial of the action" provided that the arbitration agreement is in writing and provided that the applicant for stay is not in default in proceeding with the arbitration. FAA, 9 U.S.C. § 3. If these requirements are met, a court must grant a stay. *Williams-Bell v. Perry Johnson Registrars Inc.*, Case No. 14 C 1002, 2015 U.S. Dist. LEXIS 2033, at *8-9 (N.D. Ill. Jan. 8, 2015); *Cramer v. Bank of Am.*, No. 12 C 8681, 2013 U.S. Dist. LEXIS 75592, at **13-14 (N.D. Ill. May 30, 2013). The cases cited by Defendants favoring dismissal are distinguishable on the basis that the parties in these cases failed to request a stay. *See, e.g.*, *Williams-Bell*, 2015 U.S. Dist. LEXIS at *9

14

(explaining that, in *Johnson*, one case cited by Defendants, the Seventh Circuit affirmed dismissal because the plaintiff did not request a stay and therefore did not meet the requirements of Section 3 of the FAA). Here, the arbitration clause is in writing, Plaintiffs are not in default in proceeding with the arbitration, and Plaintiffs request a stay. Accordingly, pursuant to Section 3 of the FAA, the Court should stay, not dismiss, this case in the event that the Court compels arbitration of all of Plaintiffs' claims.

## IV. CONCLUSION

The Court should enter an Order denying Defendants' Motion to Compel Arbitration because, when viewed together, the Purchase Agreement, the Non-Competition Agreement, and Employment Agreement demonstrate that Kapadia agreed to litigate all of the claims in this case in the state or federal courts located in Chicago, Illinois. In the event that the Court finds that the arbitration clause in the Employment Agreement does not conflict with Purchase Agreement and can be enforced, the Court should only compel arbitration of the claims that solely relate to Kapadia's employment with Serene AST. Finally, all claims with respect to Suavis should remain before this Court for adjudication, as Suavis is a non-signatory to the Employment Agreement and has failed to satisfy the requirements for equitable estoppel or any other basis by which non-signatory may compel arbitration of its claims.

WHEREFORE, Plaintiffs Applications Software Technology LLC ("AST") and Serene AST, LLC ("Serene AST" and collectively with AST, "Plaintiffs") respectfully request that this Court enter an Order denying Defendants' Motion to Compel Arbitration in its entirety, or, in the alternative, compelling arbitration of Plaintiffs' claims only to the extent that they are directed to Kapadia and to the extent that these claims solely arise from Kapadia's employment with Serene AST.

Dated: May 9, 2018.

        Respectfully submitted,

        **APPLICATIONS SOFTWARE TECHNOLOGY LLC AND SERENE AST, LLC**

By:   /s/    Gary Vist

        Gary Vist
        Nancy E. Sasamoto
        David J. Stein
        Jiwon J. Yhee
        Masuda, Funai, Eifert & Mitchell, Ltd.
        203 N. LaSalle Street, Suite 2500
        Chicago, Illinois 60601-1262
        Tel:  (312) 245-7500
        Fax:  (312) 245-7467
        gvist@masudafunai.com
        nsasamoto@masudafunai.com
        dstein@masudafunai.com
        jyhee@masudafunai.com
        ***Attorneys for Plaintiff***