**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| APPLICATIONS SOFTWARE TECHNOLOGY LLC, as successor by merger and conversion to APPLICATIONS SOFTWARE TECHNOLOGY CORPORATION, and SERENE AST, LLC, | Case No. 2018 cv 00822 |
| Plaintiffs, | |
| v. | Honorable Ronald A. Guzman |
| PARESH KAPADIA and SUAVIS CORPORATION, | Magistrate Judge Daniel G. Martin |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, IN THE
ALTERNATIVE, TO STAY THESE PROCEEDINGS PENDING ARBITRATION**

In their opening brief, Defendants demonstrated that the parties expressly agreed to arbitrate their disputes, that all of Plaintiffs' claims fall within the scope of the arbitration agreement, and that the Court therefore should compel arbitration and dismiss or stay these proceedings. Plaintiffs have failed to rebut the "liberal federal policy favoring arbitration" and the "presumptive arbitrability" of their claims (*see* Mot. [Dkt. No. 46] at pp. 3, 8), and Defendants' motion should be granted.

**I.      The Purchase Agreement's forum selection clause is inapplicable.**

As set forth in Defendants' motion, the Employment Agreement contains a mandatory, broadly worded arbitration provision stating that "any controversy or claim arising out of or relating to this Agreement . . . shall be settled by binding arbitration." (Mot. at p. 2.) Plaintiffs do not and cannot dispute this. Instead, in an effort to avoid arbitration, Plaintiffs argue that this mandatory arbitration provision conflicts with the Purchase Agreement's forum selection clause, under which the parties allegedly consented to the "exclusive jurisdiction" of the state or federal courts located in Chicago, and that the Purchase Agreement prevails. (Resp. [Dkt. No. 50] at pp. 7-9.) Plaintiffs' argument completely misses the mark.

Plaintiffs cannot cite a single case in support of their erroneous contention that "exclusive jurisdiction" provisions somehow nullify mandatory arbitration provisions. Instead, Plaintiffs cite two cases involving change of venue pursuant to 28 U.S.C. § 1404(a) and one case involving removal from state to federal court. (Resp. at pp. 7-8 (citing *Prof'l LED Lighting, Ltd. v. Aadyn Tech.*, LLC, No. 14-cv-2440, 2014 WL 6613012 (N.D. Ill. Nov. 21, 2014); *Piechur v. Redbox Automated Retail, LLC*, No. 09-cv-984-JPG, 2010 WL 706047 (S.D. Ill. Feb. 24, 2010)[1]; *Newell Co. v. Lee*, 950 F. Supp. 864 (N.D. Ill. 1997)).)

Not one of these cases involves the interpretation or application of a mandatory arbitration provision, and Plaintiffs' argument fails for that reason alone. *See ValuePart, Inc. v. Farquhar*, No. 14-cv-3004, 2014 WL 4923179, at *5 (N.D. Ill. Sept. 29, 2014) (St. Eve, J.) ("[Plaintiff's] attempt to analogize the holding in *Muzumdar* to the facts of this case fails because *Muzumdar* addressed two conflicting forum selection clauses—it did not address the interplay between an arbitration provision and a forum selection clause.")).

Moreover, the "exclusive jurisdiction" provisions in these cases appeared in contracts under which the plaintiffs actually sought relief. *See, e.g.*, *Prof'l LED Lighting*, 2014 WL 6613012, at *4 ("The forum selection clause at issue is found in the Non-Exclusive Representative Agreement . . . . The Non-Exclusive Representative Agreement is also at the heart of Plaintiff LED's breach of contract claim . . . ."). Critically, though Plaintiffs purport to rely on the Purchase Agreement's forum selection clause, they have not even brought a claim under that contract.

Quite simply, Plaintiffs cannot cite a single case in support of their position because their position has been squarely rejected by courts in this District. In *ValuePart*, the plaintiff tried to

---

[1] The *Piechur* case is out of the Southern District of Illinois. Plaintiffs erroneously cite it as a Northern District of Illinois case. (*See* Resp. at 8.)

skirt a "permissive" arbitration provision by claiming it conflicted with the contract's "mandatory" forum selection clause. *ValuePart*, 2014 WL 4923179, at *4. The court rejected the plaintiff's argument. The court first emphasized that courts must analyze the interplay between arbitration provisions and forum selection clauses differently than cases that simply involve multiple forum selection clauses. *Id.*, at *5. Specifically, "[c]ourts that have addressed the issue of conflicting forum selection and arbitration clauses contained in one agreement (or contained in multiple governing agreements or rules) have analyzed the issue as whether the forum selection clause waives the parties' right to arbitration." *Id.* (collecting cases). The court then explained:

> Courts will only find a waiver of arbitration rights when, under the totality of the circumstances, the defaulting party acted inconsistently with the arbitration right. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability. Further, any waiver of a mandatory arbitration provision should be explicit in view of the federal policy favoring arbitration.

*Id.*, at *5 (internal quotations and citations omitted).

In light of these well-established principles, the court held that where the "mandatory" forum selection clause "does not specifically exclude or prohibit arbitration," the forum selection clause cannot supersede the provisions of the mandatory arbitration provision. *Id*., at *6 (citing *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 989 (N.D. Ill. 2007) (compelling arbitration despite the strong language of the forum selection clause because the forum selection clause did not specifically exclude or displace arbitration); *Pers. Sec. & Safety Sys., Inc. v. Motorola*, 297 F.3d 388, 396 n.11 (5th Cir. 2002) ("a forum selection clause cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration"); *West Shore Pipe Line Co. v. Associated Elec. and Gas Ins. Servs. Ltd.*, 791 F. Supp. 200, 204 (N.D. Ill. 1992) (compelling arbitration and holding that "any waiver of a mandatory arbitration provision should be explicit in view of the federal policy favoring arbitration"); *Geldermann, Inc. v. Stathis*, 177 Ill.

App. 3d 414, 419-22 (Ill. App. Ct. 1992) (compelling arbitration despite a forum selection clause that stated that venue "shall lie exclusively with any State . . . [or] Federal Court of competent jurisdiction"); *Patten Sec. Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987) (compelling arbitration in part because the forum selection clause did not reference arbitration and was "therefore at least ambiguous")).

Here, it is undisputed that the Employment Agreement contains a mandatory arbitration provision. It further is undisputed that neither the Purchase Agreement nor the Non-Competition Agreement expressly exclude or prohibit arbitration. To the contrary, as in *ValuePart*, the forum selection clauses in these agreements "[do] not even mention arbitration." *ValuePart*, 2014 WL 4923179, at *6. Accordingly, "[i]n light of the federal policy that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, and the requirement that waiver of a mandatory arbitration provision be explicit, under these circumstances the forum selection clause does not trump the provisions of the mandatory arbitration clause." *Id.*

## II. All of Plaintiffs' claims are within the scope of the Employment Agreement's mandatory arbitration provision.

As Defendants established in their opening brief, all of Plaintiffs' claims are within the scope of the Employment Agreement's mandatory and broadly-worded arbitration provision, which expressly covers *any* controversy or claim *arising out of* or *relating to* the Employment Agreement. (Mot. at pp. 8-10.) Plaintiffs have not come close to rebutting the "presumptive arbitrability" of their claims. (*See id.* at p. 8.) Instead, Plaintiffs rely exclusively on *Rosenblum v. Travelbuys.com Ltd.*, 299 F.3d 657 (7th Cir. 2002)—a case that is wholly inapposite to the facts at hand—in an attempt to narrow the plain terms of the arbitration provision.

In *Rosenblum*, the plaintiff brought an action against a corporation that bought his business, alleging breach of the parties' *acquisition agreement* following the buyer's failure to make a

4

scheduled payment pursuant to that agreement. The buyer moved to dismiss, alleging that the arbitration provision in the parties' *employment agreement* required the plaintiff to arbitrate his claims. But the plaintiff sought no relief whatsoever under the employment agreement, and the terms of the employment agreement were completely unrelated to the plaintiff's claims. In other words, the plaintiff "did not seek any direct benefit from the contract with the arbitration clause," but rather, "sought a benefit called for by the acquisition agreement (*i.e.*, a monetary payment) that would have been due, at least according to his allegations, whether or not he ever agreed to stay on with the company under the terms set forth in the employment agreement." *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 583 (N.D. Ill. 2006).

Based on those facts, the *Rosenblum* court held that the arbitration clause "was not susceptible to an interpretation that includes this dispute" because the dispute "has nothing to do with [the plaintiff's] employment." *Rosenblum*, 299 F.3d at 664; *see also ValuePart*, 2014 WL 4923179, at *9 ("because the [*Rosenblum*] action related *solely* to the acquisition agreement, and had 'nothing to do' with the [plaintiff's] employment, the arbitration provision in the employment agreement did not apply") (emphasis added).

The Seventh Circuit has made clear, however, that its holding in *Rosenblum* in no way undermines the well-established "presumption of arbitrability" which requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012). *Rosenblum*, the court explained, was fact-dependent, and the result was premised on the fact that the dispute at issue arose *wholly* out of a contract that did not contain an arbitration clause. *Id.* (emphasis added). But where a plaintiff's claims are interlinked—even if only tangentially—with multiple agreements, including an agreement that contains an arbitration clause, then court must resolve any doubt in favor of

arbitrability and find that the claims fall within the scope of the arbitration clause. *Id.* at 1035.

As set forth in Defendants' opening brief, there is no question that all of Plaintiffs' claims are "interlinked" with the terms of the Employment Agreement. Plaintiffs seek direct relief under the Employment Agreement. (*See* Mot. at pp. 7.) They incorporate by reference their breach of Employment Agreement claim against Kapadia, and the factual allegations upon which the claim is based, into all of their other claims. (*Id.*) They rely on the express terms of the Employment Agreement, or Kapadia's employment with Serene AST, as the bases for their allegations and requested relief in every single one of their claims. (*Id.* at pp. 7-10.) Plaintiffs do not and cannot deny any of these points, and all of their claims are subject to arbitration.

**III.    California law applies to this dispute, and under California's equitable estoppel doctrine, Defendants may compel Plaintiffs to arbitrate their claims.**

Plaintiffs claim that Illinois law governs the enforceability of the Employment Agreement, and that under Illinois law, Defendants cannot compel AST to arbitrate its claims against Defendants. Plaintiffs do not undertake any meaningful choice-of-law analysis and instead rely solely on the Employment Agreement's choice-of-law provision. A proper analysis makes clear, however, that California law governs this dispute. And under California's doctrine of equitable estoppel, Defendants may compel Plaintiffs to arbitrate their claims.

**1.    California law applies.**

Federal courts sitting in diversity jurisdiction apply the choice-of-law rules of the forum state. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions. *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 825 (Ill. App. Ct. 2007) (quoting *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill. 2d 560, 568 (Ill. 2000). Section 187 of the Restatement applies when the

parties have made an express choice of law in their contract. *Id.* (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 76 (Ill. App. Ct. 1994)). Section 187 provides:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* (citing *Restatement (Second) of Conflict of Laws* § 187(2) (1971)). The public policy of a state is sought in its constitution, legislative enactments, and judicial decisions. *Id.* (quoting *Roanake Agency, Inc. v. Edgar*, 101 Ill. 2d 315, 327 (Ill. 1984)).

Applying these factors to the allegations in the Complaint, it is clear that California law, and not Illinois law, governs the enforceability of the Employment Agreement.

First, as the Complaint demonstrates, the parties have virtually no relationship to Illinois, let alone a "substantial" one. As alleged in the Complaint, defendant Kapadia is a California citizen. (Compl. at ¶ 3.) Defendant Suavis is a California corporation with its principal place of business in California. (*Id.* at ¶ 4.) Plaintiff Serene AST is a California limited liability company with its principal place of business in California. (*Id.* at ¶ 2.) Kapadia worked out of Defendants' California office, and all of the alleged acts giving rise to Plaintiffs' claims occurred in California. (*See id.* at, *e.g.*, ¶¶ 3-4, 37-53, 58-60, 66.) Indeed, Defendants' only contact with Illinois was when Plaintiffs required Kapadia to travel from California to AST's Illinois headquarters so that Plaintiffs could then fire him—even though Kapadia was not an AST employee. (*Id.* at ¶¶ 62-63.) In short, the only state with a "substantial relationship" to this dispute is California.

Second, applying Illinois law in this matter would run afoul of well-established California public policy. Plaintiffs' claims are premised on the Non-Competition and Non-Interference provisions of the parties' Employment Agreement. But under section 16600 of the California

Business & Professional Code, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. The California Supreme Court has emphasized that section 16600 "evinces a settled legislative policy in favor of open competition and employee mobility" which "protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Edwards v. Arthur Andersen LLP*, 81 Cal. Rptr. 3d 282, 291 (Cal. 2008) (internal quotations and citations omitted).

The only exceptions to this blanket prohibition on non-competition agreements are if the non-competition agreement is executed in connection with the sale of a business, dissolution of a partnership or dissociation of the partner from the partnership, or dissolution of an LLC or termination of an LLC member's interest. None of these exceptions apply to the non-competition provision contained Kapadia's Employment Agreement with Serene AST. Accordingly, that non-competition provision is unenforceable, and there can be no question that applying Illinois law here violates California's "settled legislative policy."

The facts of this case are substantially similar to the facts in *Merritt, Hawkins & Assocs., LLC v. Caporicci*, No. 05-15-00851-CV, 2016 WL 1757251 (Tex. App. May 2, 2016), in which the court, applying section 187 of the Restatement, determined that California law governed the parties' dispute notwithstanding the contract's Texas choice-of-law provision. In reaching its conclusion, the court first found that California had a substantial relationship to the dispute and that Texas did not. The court relied on the fact that defendants (who, like Kapadia, were former employees of plaintiff) completed their employment agreements and performed their jobs in California, and that the "gist" of the suit was based on the defendants' performance of their employment agreements. *Id.*, at **3-4. The court specifically found that the existence of

plaintiff's headquarters and support divisions in Texas were insufficient to give Texas the requisite

substantial relationship to the dispute. *Id.*, at \*3.

Second, the court found that, since Texas law (like Illinois law) allows the enforcement of

noncompetition clauses to the extent they are reasonable, "applying Texas law would contravene

a fundamental policy of California law" set forth in section 16600. *Id.*, at \*4. Accordingly, the

court held that California law governed the dispute despite the contract's choice-of-law provision.

*See also LKQ Corp. v. Fengler*, No. 12-cv-2741, 2012 WL 1405774, at \*\*4-5 (N.D. Ill. Apr. 23,

2012) (applying California law despite Illinois choice-of-law provision where the case implicated

section 16600 and where California had a materially greater interest in the case than Illinois).

Here, where the facts are nearly identical to *Merritt*, it is clear that California law applies.

**2.      Under California's equitable estoppel doctrine, Defendants may compel AST to arbitrate its claims.**

"California law permits non-signatories to invoke arbitration agreements in limited

circumstances under the doctrine of equitable estoppel." *In re Henson*, 869 F.3d 1052, 1060 (9th

Cir. 2017). Under California law:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of
> equitable estoppel applies in two circumstances: (1) when a signatory must rely on
> the terms of the written agreement in asserting its claims against the nonsignatory
> or the claims are intimately founded in and intertwined with the underlying
> contract, and (2) when the signatory alleges substantially interdependent and
> concerted misconduct by the nonsignatory and another signatory and the allegations
> of interdependent misconduct are founded in or intimately connected with the
> obligations of the underlying agreement.

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Kramer v. Toyota Motor*

*Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013). "This rule reflects the policy that a plaintiff may

not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the

agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's

9

applicability because the defendant is a non-signatory.'" *Id.* (quoting *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2009)).

The rule and rationale for California's equitable estoppel doctrine are identical to the rule and rationale under federal law. (*See* Mot. at pp. 6-8.) And, as set forth in Defendants' Motion to Compel Arbitration, Defendants easily have shown that under the doctrine of equitable estoppel, they may compel Plaintiffs to arbitrate their claims. Specifically, Plaintiffs reference and rely on the express terms of the Employment Agreement in every single one of their claims, and the "sum and substance" of Plaintiffs' Complaint revolves around the alleged interdependent and concerted misconduct by Kapadia and Suavis to breach, and tortuously interfere with, the Employment Agreement. (*Id.*) Plaintiffs do not and cannot dispute these points, and Defendants' motion should be granted.

## IV. In the event the Court determines that only some of Plaintiffs' claims are arbitrable, the remainder of Plaintiffs' claims should be stayed pending completion of arbitration.

As set forth here and in Defendants' opening brief, all of Plaintiffs' claims are arbitrable, and Plaintiffs must be compelled to arbitrate. In the event the Court determines that only some of Plaintiffs' claims are arbitrable, however, Defendants agree with Plaintiffs that the Court should compel those claims to arbitration and that remainder of Plaintiffs' claims should be stayed pending completion of the arbitration proceedings.

## CONCLUSION

For all of these reasons and the reasons set forth in Defendants' opening memorandum, Defendants Paresh Kapadia and Suavis Corporation respectfully request that this Court enter an order compelling Plaintiffs to arbitrate their claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and dismiss Plaintiffs' Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, stay these proceedings pursuant to 9 U.S.C. § 3, and order such other and further relief as this Court deems just and fair.

Dated:  May 23, 2018

Respectfully Submitted,

**PARESH KAPADIA** and **SUAVIS CORPORATION**

Mark H. Horwitch
Katherine O'Brien
Jacob B. Berger
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, IL  60604
Telephone: (312) 762-9450
mhorwitch@tdrlawfirm.com
kobrien@tdrlawfirm.com
jberger@tdrlawfirm.com

By:         /s/ Mark H. Horwitch
                One of Their Attorneys

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true copy of the aforementioned document was filed electronically with the United States District Court on May 23, 2018.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/  Mark H. Horwitch
