**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| APPLICATIONS SOFTWARE TECHNOLOGY LLC and SERENE AST, LLC, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 18 CV 822<br>)<br>) Judge Ronald A. Guzmán |
| PARESH KAPADIA and SUAVIS CORPORATION, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, defendants' motion to compel arbitration is granted in part and denied in part, and plaintiffs' motion to strike arguments raised in defendants' reply brief is denied as moot.

### BACKGROUND

Plaintiffs, Applications Software Technology LLC ("AST") and Serene AST, LLC ("Serene") are companies that provide "information technology solutions through both cloud-based and traditional software for customer experience applications." (ECF No. 1, Compl. ¶ 1.) In August 2015, AST entered into acquisition discussions with Serene's predecessor company, Serene Corporation. At the time of those discussions, defendant Paresh Kapadia was one of Serene Corporation's four shareholders. (*Id.* ¶ 8.) Following those negotiations, AST agreed to purchase all of Serene's equity. (*Id.* ¶ 9.) In a Purchase Agreement dated September 14, 2015, AST purchased all of Serene's equity securities (through a corporation called VANP, Inc. ("VANP"), of which Kapadia owns 46.7 percent). (*Id*. ¶¶ 9-10 & ECF No. 1-2, Purchase

Agreement.) Kapadia executed the Purchase Agreement in his individual capacity as a stockholder of VANP.

As part of the transaction, Serene retained three of Serene Corporation's former shareholders as Serene's employees, one of whom was Kapadia. (Compl. ¶ 13.) Serene and Kapadia entered into an Employment Agreement that took effect on September 14, 2015 and was later amended on January 10, 2017. (*Id.* ¶¶ 14-15.) The Employment Agreement sets forth, among other things, Kapadia's term of employment and compensation, as well as his confidentiality, non-competition, and non-solicitation obligations. (ECF No. 1-3, Employment Agreement.) It also contains a mandatory arbitration provision that states in pertinent part as follows:

> 7.9 <u>Arbitration</u>. Except as provided in <u>Section 7.1</u> above with respect to injunctive relief, any controversy or claim arising out of or relating to this Agreement, the breach hereof or [Kapadia]'s employment by [Serene], including without limitation wrongful termination or discrimination claims, shall be settled by binding arbitration held in Chicago, Illinois in accordance with the rules of the American Arbitration Association's ("<u>AAA</u>") Model Employment Dispute Arbitration Procedures then in effect, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. . . . The award of the arbitrator shall be binding and final on all parties. . . .

(Employment Agreement at 11.) Also on September 14, 2015, Kapadia entered into a separate Non-Competition Agreement with AST. (ECF No. 1-1, Non-Competition Agreement.) Neither the Purchase Agreement nor the Non-Competition Agreement contains an arbitration provision.

Plaintiffs allege that in December 2017, they became aware of "an ongoing and nefarious scheme" pursuant to which Kapadia created a new corporation, defendant Suavis Corporation ("Suavis"), "and began competing directly with the business of AST and [Serene]," in violation of various covenants in the agreements described above. (Compl. ¶¶ 3, 34.) Serene terminated Kapadia's employment on January 9, 2018. (*Id.* ¶ 65.) Plaintiffs allege that while employed by

Serene, Kapadia misappropriated plaintiffs' client relationships and trade secrets and "poached" AST and Serene's employees to leave plaintiffs' employment and work for Suavis. (*Id.* ¶ 3.) They also allege that Kapadia converted plaintiffs' property. (*Id.*)

Plaintiffs filed this action on January 31, 2018. In Counts I and II of the complaint, plaintiffs allege that Kapadia and Suavis violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. In Counts III, IV, and V, plaintiffs allege that Kapadia breached the Employment Agreement, breached the Non-Competition Agreement, and breached his duty of loyalty to Serene. Counts VI and VII are plaintiffs' claims against Suavis for tortious interference with contract and prospective economic advantage. Count VIII is a claim that defendants converted plaintiffs' property. In Count IX, which is pleaded in the alternative, plaintiffs allege that Kapadia was unjustly enriched.

Defendants move to compel arbitration and dismiss this case for lack of subject-matter jurisdiction or, in the alternative, to stay these proceedings pending arbitration.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the enforcement of arbitration agreements. *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2002). The FAA "evinces a national policy favoring arbitration" and "requires federal courts to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (internal quotation marks and citations omitted). The Court will compel arbitration under the FAA "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Id.* at 1060. The third element is satisfied because plaintiffs refuse to arbitrate.

### A. Enforceable Written Agreement to Arbitrate

Defendants ask the Court to compel arbitration based on the mandatory arbitration provision in the Employment Agreement. Plaintiffs contend that there is no valid agreement to arbitrate because, in contrast to the Employment Agreement, the Purchase Agreement and the Non-Competition Agreement do not contain arbitration provisions, but do contain forum-selection clauses that provide for the "exclusive jurisdiction" of courts in Chicago.

The Non-Competition Agreement provides:

> The state and federal courts within Chicago, Illinois, have exclusive jurisdiction over any controversy or claim arising out of or related to this Agreement, including any question regarding its existence, validity, termination or breach, as well as any non-contractual claims arising out of the parties' relationship. The parties to this Agreement hereby consent to the jurisdiction of the state and federal courts in Chicago, Illinois and irrevocably waive any objections to the venue or jurisdiction of said courts.

(Non-Competition Agreement at 6.)

The Purchase Agreement provides:

> The parties to this Agreement submit to the exclusive jurisdiction of the state courts located in Chicago, Illinois or the courts of the United States located in Chicago, Illinois in respect of the interpretation and enforcement of the provisions of this Agreement and any related agreement, certificate or other document delivered in connection herewith and by this Agreement waive, and agree not to assert, any defense in any action for the interpretation or enforcement of this Agreement and any related agreement, certificate or other document delivered in connection herewith, that they are not subject thereto or that such action may not be brought or is not maintainable in such courts or that this Agreement may not be enforced in or by such courts . . ., or that the venue of the action is improper.

(Purchase Agreement at 59.) The Purchase Agreement conditioned AST's obligations to purchase Serene's equity on the satisfaction of several conditions as of the Closing Date of the Agreement, including the execution and delivery of Kapadia's Employment Agreement and Non-Competition Agreement. (*Id.* at 10-11.) Furthermore, plaintiffs point out, the Purchase

Agreement contains a provision titled "Conflict Between Transaction Documents," which states: "The parties agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other agreement, document or instrument contemplated hereby, this Agreement will govern and control." (*Id.* at 60.) Therefore, plaintiffs say, the Purchase Agreement's selection of state or federal courts in Chicago governs their claims, not the Employment Agreement's conflicting arbitration clause. In reply, defendants argue that plaintiffs have not brought a claim under the Purchase Agreement and, in any event, a forum-selection clause does not nullify an arbitration clause where the forum-selection clause does not specifically preclude arbitration.

Whether the parties have agreed to arbitrate is a question normally answered by the court, and the issue is governed by state-law principles governing contract formation. *Wis. Local Gov't Prop. Ins. Fund v. Lexington Ins. Co.*, 840 F.3d 411, 414 (7th Cir. 2016). Neither plaintiffs nor defendants consider which state's law applies to the analysis of the interplay between the arbitration provision of the Employment Agreement and the forum-selection clauses of the Purchase Agreement and Non-Competition Agreement.[1] The law chosen in the agreements is that of Illinois, so that is what the Court will apply. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011).

Under Illinois law, "where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract." *Bankier v. First Fed. Sav. & Loan Ass'n of Champaign*, 588 N.E.2d 391, 394 (Ill. App. Ct.

---

[1]The parties do address and dispute which state's law applies to the estoppel issue, which is discussed below. But that is a separate consideration. *See, e.g.*, *A.D.*, 885 F.3d at 1063 n.14.

1992). The Employment Agreement, Purchase Agreement, and Non-Competition Agreement were executed contemporaneously, so the Court construes them together. "It is fundamental in contract construction that, if possible, effect must be given to all of the language so that provisions which appear to be conflicting or inconsistent may be reconciled and harmonized." *Id.* Furthermore, where one intention is expressed in one provision of a contract and a possibly conflicting intention appears in another provision, "full effect should be given to the more principal and specific provision, and the general provision should be subjected to such modification or qualification as the specific provisions make necessary." *Brzozowski v. N. Tr. Co.*, 618 N.E.2d 405, 409 (Ill. App. Ct. 1993).

These principles of contract construction point to this Court's enforcement of the mandatory arbitration provision in the Employment Agreement. While it may seem that the provision conflicts with the forum-selection clauses of the other two agreements, courts have reconciled such provisions by interpreting a forum-selection clause as dictating the location of any action that might be necessary after arbitration to enforce any arbitration award. *See Geldermann, Inc. v. Stathis*, 532 N.E.2d 366, 370 (Ill. App. Ct. 1988) (""[T]here is no irreconcilable inconsistency between [the provisions]. Both can be given effect, since arbitration awards are not self-enforceable."); *W. Shore Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 791 F. Supp. 200, 204 (N.D. Ill. 1992) (holding that a service-of-suit clause could reasonably be interpreted to facilitate litigation following arbitration, concerning enforcement of any arbitration ruling, without curtailing the mandatory arbitration provision). Since the provisions can be reconciled by so qualifying the forum-selection clauses, it is the Court's view that the arbitration provision should be enforced as more principal and specific. The Court is also guided by the fact that the forum-selection clauses of the Purchase Agreement and Non-

Competition Agreement do not specifically preclude arbitration or even mention arbitration. Several other courts have compelled arbitration "in instances where both forum selection and arbitration clauses applied, but the forum selection clause did not contain language specifically excluding or prohibiting arbitration." *ValuePart, Inc. v. Farquhar*, No. 14 CV 3004, 2014 WL 4923179, at *6 (N.D. Ill. Sept. 29, 2014) (citing cases); *see also ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 989 (N.D. Ill. 2007); *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) ("[W]e cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration.") (internal quotation marks and citation omitted), *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010).[2] "These holdings reflect the strong presumption against finding that the parties have waived their right to arbitration once they have agreed to arbitrate." *ValuePart*, 2014 WL 4923179, at *6. Accordingly, the Court finds that there is an enforceable arbitration agreement here.

**B.     Dispute Within Scope of Arbitration Agreement**

Plaintiffs argue that even if the arbitration clause in the Employment Agreement is enforceable, some of their claims do not fall within its scope. Defendants maintain that all of plaintiffs' claims are subject to arbitration. As set forth above, the parties to the Employment Agreement are Serene and Kapadia, who agreed to arbitrate "any controversy or claim arising out of or relating to" that Agreement, its breach, *or* Kapadia's employment by Serene. (Employment Agreement at 11.)

---

[2]The Court notes that in support of their contention that the forum-selection clauses conflict with the arbitration provision and trump it, plaintiffs do not cite authority that involved a mandatory arbitration provision. (ECF No. 50, Pls.' Resp. Defs.' Mot., at 8.)

Plaintiffs contend that they cannot be compelled to arbitrate any claims that relate to or arise from the Purchase Agreement or the Non-Competition Agreement because "there is no indication that the parties intended for the Employment Agreement's arbitration clause to apply to those claims." (Pls.' Resp. Defs.' Mot. at 12.) The Court disagrees. Serene and Kapadia agreed to arbitrate controversies that arose out of or related to his employment by Serene. After carefully reviewing the complaint, the Court finds that all of Serene's claims against Kapadia relate to the Employment Agreement or Kapadia's employment (or both) and accordingly must be arbitrated. The Court of Appeals reads expansive phrases like "arising out of" and "relating to" broadly, *see Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033-36 (7th Cir. 2012), and the applicability of the arbitration provision is rendered even broader by the inclusion of controversies that relate to Kapadia's employment. The complication, however, is that there is a non-signatory to the Employment Agreement on each side of the case (AST and Suavis).

State contract law governs whether an arbitration agreement is enforceable by or against a non-party. *A.D.*, 885 F.3d at 1063 n.14; *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (2017) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). As discussed above, the parties' contractual choice of law is that of Illinois. Defendants do not address the choice-of-law issue in their opening brief, and with respect to the issue of non-signatories, cite decisions that applied *federal* law and predate the Seventh Circuit's "clarifi[cation]" in *Scheurer, see Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018), that it is *state* law that governs whether a non-party should be bound by the terms of another's contract. In response, plaintiffs cite *Scheurer* and argue that Illinois law applies, pursuant to the contractual choice-of-law provision. In their reply brief, defendants argue for the first time that California law governs. Plaintiffs move to strike the argument on the ground that defendants waived it by

failing to raise it in their opening brief. The Court denies the motion to strike as moot because it has not considered defendants' argument for the application of California law. There is no reason why counsel could not have ascertained in their legal research that state law is the applicable body of law and presented a choice-of-law argument in their opening brief. Defendants' response that their reliance on California law is "not new" because they referred to it during the TRO hearing, (ECF No. 56, Defs.' Resp. Pls.' Mot. Strike at 1), is disingenuous. The precise procedural issue is which state's law applies to the analysis regarding the non-signatories; that issue did not arise until defendants filed their motion to compel arbitration, and the argument in their opening brief simply missed the mark. Because defendants waived the argument for applying California law, *see Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."), the Court will apply Illinois law, according to the Employment Agreement's choice of law. *See A.D.*, 885 F.3d at 1063 n.14.

Generally, under Illinois law, only signatories to an arbitration agreement can move to compel arbitration. *See Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 619 (Ill. App. Ct. 2000). But some Illinois courts have recognized contract-based theories under which a non-signatory to an agreement may be bound by the arbitration agreement of others, such as (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing or alter ego, (5) estoppel, and (6) third-party-beneficiary status. *Equistar Chems., LP v. Hartford Steam Boiler Inspection & Ins. Co. of Conn.*, 883 N.E.2d 740, 747 (Ill. App. Ct. 2008) (citing, *inter alia, Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. App. Ct. 2004)). Defendants invoke an estoppel theory that has been recognized by various federal courts. They contend that even though AST was not a party to the Employment Agreement, it is estopped from opposing arbitration because it has

9

knowingly sought the direct benefits of the Employment Agreement by relying on it as a basis for its allegations and requested relief in all of its claims. And defendants contend that Suavis may enforce the arbitration clause against plaintiffs because plaintiffs refer to the terms of the Employment Agreement in asserting their claims against Suavis and because plaintiffs have alleged "substantially interdependent and concerted misconduct" by Suavis and Kapadia. (ECF No. 46, Defs.' Mot. Compel Arbitration at 7.)

As plaintiffs correctly observe, Illinois courts have rejected the "expanded interpretation of equitable estoppel" on which defendants rely. *Ervin*, 812 N.E.2d at 542; *see also Peach v. CIM Ins. Corp.*, 816 N.E.2d 668, 674 (Ill. App. Ct. 2004). Under Illinois law, "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable." *Ervin*, 812 N.E.2d at 541; *see also Warciak*, 880 F.3d at 872. Defendants do not present any argument regarding estoppel in the event that Illinois law applies, nor do they argue that plaintiffs did or said anything when Serene entered into the Employment Agreement with Kapadia that would have led Suavis to rely to its detriment upon plaintiffs' action or statement.³ The Court therefore concludes that the arbitration agreement between Serene and Kapadia is not enforceable by Suavis or against AST.

The upshot of this conclusion is that only Serene's claims against Kapadia must be arbitrated. Suavis cannot compel plaintiffs to arbitrate their claims against it, nor can defendants

---

³Plaintiffs note that Suavis was not yet incorporated and did not exist at the time the Employment Agreement was executed.

compel AST to arbitrate its claims against either defendant. The parties agree that in this scenario, the Court should stay plaintiffs' non-arbitrable claims pending completion of the arbitration proceedings, so that will be the Court's order.

## CONCLUSION

Defendants' motion to compel arbitration and dismiss for lack of subject-matter jurisdiction or, in the alternative, to stay these proceedings pending arbitration [46] is granted in part and denied in part. Arbitration shall proceed on the claims of plaintiff Serene AST, LLC against defendant Paresh Kapadia. The remainder of plaintiffs' claims in this proceeding are stayed pending completion of arbitration. Plaintiffs' motion to strike arguments raised in defendants' reply brief [53] is denied as moot. The parties are requested to file by December 17, 2018 a joint status report regarding the progress of arbitration.

**DATE**: June 26, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**